No. 25-1248

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

STATE OF MARYLAND, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Maryland

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY
PENDING APPEAL AND AN IMMEDIATE ADMINISTRATIVE
STAY PENDING DISPOSITION OF THE STAY MOTION**

YAAKOV M. ROTH
  *Acting Assistant Attorney
  General*

KELLY O. HAYES
  *United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON
STEVEN A. MYERS
  *Attorneys, Appellate Staff
  Civil Division, Room 7232
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-8648*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................1

I. This Court Has Appellate Jurisdiction. .........................................1

II. The Government Is Likely To Prevail On The Merits......................3

    A. The District Court Lacked Jurisdiction. ................................3

        1. Article III Standing...........................................3

        2. Civil Service Reform Act Channeling ............................6

    B. The Government Did Not Conduct A Reduction In Force Requiring Notice To States............................................7

III. The Equitable Factors Favor A Stay. ...........................................9

CONCLUSION .....................................................................................12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## INTRODUCTION

The district court's sweeping order compelling the reinstatement of thousands of terminated employees at eighteen different federal agencies is legally indefensible and irreparably harms the federal government every day that it remains in effect. Nothing in the states' opposition undermines any of those points, and this Court should enter a stay pending appeal and an immediate administrative stay.

## ARGUMENT

### I. This Court Has Appellate Jurisdiction.

The states are correct that TROs are "generally" and "ordinarily" not appealable, Resp. 2, 11, but as their own authority acknowledges, there are "exceptional circumstances" in which that rule does not apply. *Drudge v. McKernon*, 482 F.2d 1375, 1375 (4th Cir. 1973) (per curiam), *cited in* Resp. 11. This is such a case, for the district court's order had the "'practical effect' of granting … an injunction.'" *Abbott v. Perez*, 585 U.S. 579, 594 (2018). Indeed, despite their general observations about what it means for an order to disturb the status quo, the states ignore the Supreme Court's determination that an order compelling the "mandatory retention of [an employee] in the position from which she

was dismissed" is an injunction.  *Sampson v. Murray*, 415 U.S. 61, 74 (1974).

Plaintiffs do not further their argument by insisting that the order is set to last, by its terms, until only March 27.  *See* Resp. 11.  The court issued a 56-page opinion that provides considered views on every legal issue disputed by the parties and granted plaintiffs the ultimate relief they seek in this lawsuit: reinstatement of previously terminated probationary employees across numerous agencies.  *See Sampson*, 415 U.S. at 87; *accord, e.g.,* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2951 (3d ed.) (explaining that "[w]hen the opposing party actually receives notice of the application for a restraining order," and "there is an adversary hearing *or* the order is entered for an indeterminate length of time, the 'temporary restraining order' may be treated as a preliminary injunction." (emphasis added)). That goes far beyond limited relief preserving the status quo "just so long as is necessary to hold a" preliminary injunction hearing, "and no longer."  *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) (quotation omitted).  Every day that the order remains in effect "threaten[s] serious and perhaps irreparable harm if not

immediately reviewed," *Abbott*, 585 U.S. at 595, and the court's labeling of its order does not "shield" it "from appellate review," *Sampson*, 415 U.S. at 87. This Court should be exceptionally wary of a jurisdictional ruling that would permit every district judge in this Circuit to bind the Executive Branch for at least fourteen days before the government can even begin asking an appellate court for relief.

## II.    The Government Is Likely To Prevail On The Merits.

### A.    The District Court Lacked Jurisdiction.

#### 1.    Article III Standing

The states' cursory efforts to defend the district court's standing analysis, *see* Resp. 16-17, are unavailing. As set out in our motion, the district court rested its standing analysis on just one theory of injury— an informational injury that led to downstream economic harms. But that theory fails for multiple reasons.

At the outset, there is a basic mismatch between the informational injury the states assert (failure to receive pre-termination notice) and the sweeping remedy the district court imposed (reinstatement of thousands of terminated employees). Such relief does nothing to remedy the states' asserted informational injury because it does not provide them the information that they alleged was not provided.

The states' only authority addressing informational injury, *see*

*Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 171 (4th Cir. 2023),

demonstrates the point.  *Laufer* was brought by a disabled plaintiff who

alleged that a hotel website failed to comply with a regulation requiring

it to "[i]dentify and describe accessible features in the hotels and guest

rooms."  *Id.* at 159 (alteration in original) (quotation marks omitted).

She alleged that she "suffered an informational injury" because she had

been deprived of "information required to make meaningful choices for

travel."  *Id.* at 160 (quotation marks omitted).  She accordingly sought

"declaratory and injunctive relief," *id.* at 158—in particular, an order

requiring the hotel "to revise its websites to comply" with the

regulation.  Complaint at 9, *Laufer v. Naranda Hotels LLC*, No. 1:20-cv-

02136-CCB (D. Md. Aug. 17, 2020), ECF No. 4.  The court accepted that

Laufer had "alleged an informational injury that gives her Article III

standing to sue," *Laufer*, 60 F.4th at 166, and given the obvious

connection between the asserted injury (missing information) and the

requested relief (an order to provide it), the Court observed that the

defendant had not even contested redressability in district court, *id.* at

167.  The court's reinstatement order here, by contrast, does nothing to

remedy the informational injury of which the states complain, and indeed that purported informational injury no longer existed by the time the states filed their lawsuit.

The states' asserted "informational injury" fails in any event. The states never dispute that informational injury only suffices when it causes "'real'" harms that "are of the type that have 'traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 341) (2016)); *see* Mot. 13. The states' asserted downstream harms of "decreased tax revenue," "increased reliance on state social service programs," a "surge in unemployment claims," "disruptions to state programs depending on federal workers," and "hasty rollout of rapid response protocols," *see* Resp. 16, are not cognizable Article III injuries-in-fact, *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023). Plaintiffs' only attempt to distinguish *Texas* is their assertion that their injuries derive from their "statutory right to notice." Resp. 16. Yet the states' articulation of a statutory basis for their claims cannot solve their problem under Article III, which "requires a concrete injury even in the context of a statutory

violation." *Spokeo*, 578 U.S. at 341; *see also TransUnion, LLC v. Ramirez*, 594 U.S. 413, 426 (2021) ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III … .").

## 2. Civil Service Reform Act Channeling

The district court's order compelling the government to reinstate thousands of terminated federal employees flouted the exclusive remedial scheme created by the Civil Service Reform Act and the Federal Service Labor-Management Relations Statute. The states' only real defense of the district court's holding is to observe that Congress did not provide states an opportunity to challenge federal employees' terminations, Resp. 18-19, but that is exactly the point: in authorizing challenges to employment decisions only by unions, employees, and applicants for employment, Congress deliberately denied review to anyone else. *See Block v. Community Nutrition Inst.*, 467 U.S. 340 (1984); *United States v. Fausto*, 484 U.S. 439 (1988). Indeed, if Congress had wanted to authorize review by other parties who suffer downstream economic loss when a federal employee is terminated—his

state of residence, his spouse, his creditors, etc.—it could easily have done so.  The states thus plainly fall within a "class" of parties consciously denied the opportunity to seek review of federal employees' terminations.  *Cf.* Resp. 18 (emphasis omitted) (quoting *Koretoff v. Vilsack*, 614 F.3d 532, 536 (D.C. Cir. 2010)).

The states' attempt to distinguish *Block* fails.  *See* Resp. 19.  They observe that the statutory scheme in *Block* did not permit "participation by consumers," *id.* (quoting *Block*, 467 U.S. at 347), but the same is true of states here; no provision of the CSRA creates an "express provision for participation" by states, *Block*, 467 U.S. at 347.  While federal law may require *notice* to states of certain reductions in force, *see* Resp. 19, it nowhere provides that states may *enforce* this notice obligation in either an administrative or a judicial proceeding.  And while plaintiffs attempt to distance their claim from a "garden-variety employment claim[]," *id.*, their arguments confirm that at bottom they seek to challenge federal personnel decisions, *see* Resp. 14-15.

## B. The Government Did Not Conduct A Reduction In Force Requiring Notice To States.

Plaintiffs do not rehabilitate the district court's flawed conclusion that agencies' terminations of probationary employees amounted to an

unannounced reduction in force. A reduction in force does not occur

whenever the government terminates a large number of employees.

Mot. 17-18. Instead, a reduction in force authorizes an agency to

release an employee when such release "is required because of lack of

work; shortage of funds; insufficient personnel ceiling; reorganization;

the exercise of reemployment rights or restoration rights; or

reclassification of an employee's position d[u]e to erosion of duties." 5

C.F.R. § 351.201(a)(2). The district court speculated that the

government must have engaged in "some form of reorganization." Dkt.

No. 43, at 38 (Op.). But it cited no record evidence for that conclusion,

and plaintiffs' opposition makes no substantial attempt to defend it.

Plaintiffs instead echo the district court's conclusion that a

reduction in force must have occurred because the "terminated

probationary employees were plainly not terminated for cause." Op. 33;

*see also* Resp. 14 (suggesting that agencies were not "*honestly …*

dissatisfied" with employees' performance (quotation marks omitted)).

The government's motion explained why that theory fails, and plaintiffs

do not offer any meaningful response. Mot. 17-18. Even if it were true

that the government lacked sufficient cause to fire probationary

employees, that would not mean that the government had in fact conducted an unlawful reduction in force without notice to states—it would mean that the agencies' terminations were unlawful, a claim that may be pursued by affected employees, not states seeking to enforce an unrelated and inapplicable notice requirement.

## III.   The Equitable Factors Favor A Stay.

Finally, the equitable factors favor a stay.  As set out above, the states do not suffer Article III injury when the federal government terminates certain of their citizens' employment, *see supra* pp.3-6, let alone irreparable harm sufficient to justify a preliminary injunction, *contra* Resp. 21-22.  Nor do the states dispute that every day this court's injunction remains in place, the government is obligated to continue paying thousands of employees it had previously terminated, with no practical mechanism to recoup those funds if it prevails on appeal—a problem exacerbated by the district court's failure to require each plaintiff state to post more than a nominal $100 bond.  Beyond that, the injunction intrudes on the internal management of the government, which has "traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'"  *Sampson*, 415 U.S. at 83.

Instead of disputing these points, the states fault the government for the timing of its stay motion and observe that the government has already endeavored to comply with the TRO.  Resp. 1, 20-21.  The government's staggering efforts to comply with the court's order in less than two business days, however, only underscore the sweeping nature of the court's relief.  *See generally* Dkt. No. 52 (documenting the government's efforts to comply with the TRO).[1]  And although past harms cannot be undone, that is not a reason for this Court to leave the district court's order in place as harms to the government and the public interest mount.  As the government's motion explained, the harms to the government—including both unrecoverable financial loss and the baseless intrusion by a federal court on a coordinate branch of government's authority to manage its own workforce—continue every day that the district court's order remains in effect.

---

[1] To the extent the states suggest the government delayed seeking review in this Court, that is incorrect.  The TRO was entered after the close of business on Thursday, March 13.  *See* Dkt. No. 44.  The government filed its notice of appeal at 4:18 p.m. the following day, *see* Dkt. No. 46, but the district court did not transmit it to this Court until 1:25 p.m. on Monday, *see* Dkt. No. 51, after which the government promptly filed its stay motion.

The states' attempt to invoke injuries to "terminated probationary employees," *see* Resp. 22, is unavailing. Those individuals are not parties to this action, and the states concede that they are not suing on their behalf, *see* Resp. 16. And as our motion explained, many of those employees are endeavoring to pursue their own claims pursuant to the statutory scheme that Congress enacted. *See* Mot. 17-18.

At an absolute minimum, the states offer no principled justification for the district court's entry of nationwide relief, which extends to 31 states that did not join this action. While this Court has upheld nationwide injunctions in some cases, *see* Resp. 23 (citing *CASA, Inc. v. Trump*, No. 25-1153, 2025 WL 654902, at *1 (4th Cir. Feb. 28, 2025)), the states offer no explanation of why relief that only applied within the plaintiff states would fail to provide them complete relief, would cause confusion, or would be anything other than "clear and definite," *id*. The very nature of both our constitutional structure (with its 50 separate states) and the federal courts (with twelve geographic circuits) presupposes that different legal regimes may apply in different parts of the country at different times. The states fail to explain why, if

a nationwide injunction is warranted in this case, it would not be warranted in every case challenging federal government action.

## CONCLUSION

The Court should stay the preliminary injunction pending appeal and enter an immediate administrative stay pending consideration of this motion.

<div style="margin-left:40%">

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney*
    *General*

KELLY O. HAYES
  *United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON

 *s/ Steven A. Myers*
STEVEN A. MYERS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7232*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8648*
  *Steven.A.Myers@usdoj.gov*

</div>

March 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that this reply satisfies the type-volume requirements set out in Rule 27(d)(2)(C) because it contains 2250 words. It was prepared using Microsoft Word in Century Schoolbook, 14-point font, a proportionally spaced typeface.

*s/ Steven A. Myers*
STEVEN A. MYERS

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2025, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*s/ Steven A. Myers*
Steven A. Myers