**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

**STATE OF MARYLAND,** *et al*.,

*Plaintiffs-Appellees*,

**v.**

**UNITED STATES DEPARTMENT OF AGRICULTURE,** *et al*.,

*Defendants-Appellants.*

On Appeal from the United States District Court for the District of Maryland
(James K. Bredar, District Judge)

**BRIEF OF APPELLEES**

BRIAN L. SCHWALB
Attorney General for the
District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

ANNE DENG
TESSA GELLERSON
CHRIS EDWARD MENDEZ
MARK A. RUCCI
Assistant Attorneys General
400 6th Street N.W., 8th Floor
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

ANTHONY G. BROWN
Attorney General of Maryland

JULIA DOYLE
Solicitor General

JOSHUA M. SEGAL
Principal Deputy Solicitor General

ADAM KIRSCHNER
MICHAEL DREZNER
VIRGINIA A. WILLIAMSON
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-6584
jdoyle@oag.state.md.us

Attorneys for Appellees

(Additional counsel listed on signature page.)

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>25-1248</u>    Caption: <u>State of Maryland, et al. v. U.S. Department of Agriculture, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>State of Arizona</u>
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Hayleigh S. Crawford            Date:        April 23, 2025

Counsel for: State of Arizona

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _25-1248_     Caption: _State of Maryland, et al. v. U.S. Department of Agriculture, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

State of California
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Demian Camacho                    Date: _____April 23, 2025_____

Counsel for: State of California

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>25-1248</u>       Caption: <u>State of Maryland, et al. v. U.S. Department of Agriculture, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>State of Colorado</u>
(name of party/amicus)

_____

 who is _____<u>Appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☐YES ☑NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ David Moskowitz                    Date:        April 23, 2025

Counsel for: State of Colorado

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 25-1248          Caption: State of Maryland, et al. v. U.S. Department of Agriculture, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

State of Connecticut
(name of party/amicus)


who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.     Does party/amicus have any parent corporations?                            ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐YES ☑NO
       If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Michael Skold _____     Date: _____April 23, 2025_____

Counsel for: State of Connecticut _____

Print to PDF for Filing

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>25-1248</u>     Caption: <u>State of Maryland, et al. v. U.S. Department of Agriculture, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>District of Columbia</u>
(name of party/amicus)

_____

 who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.     Does party/amicus have any parent corporations?               ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                   ☐YES ☑NO
       If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Caroline S. Van Zile                Date:        April 23, 2025

Counsel for: District of Columbia

Print to PDF for Filing

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-1248__        Caption: __State of Maryland, et al. v. U.S. Department of Agriculture, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Delaware__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                            ☐YES ☑NO
         If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☐YES ☑NO
         If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐ YES ☑ NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Vanessa L. Kassab _____        Date: _____April 23, 2025_____

Counsel for: Delaware _____

- 2 -                                              Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>25-1248</u>     Caption: <u>State of Maryland, et al. v. U.S. Department of Agriculture, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>State of Hawaiʻi</u>
(name of party/amicus)

_____

who is _____<u>Appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.     Does party/amicus have any parent corporations?                 ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                        ☐YES ☑NO
       If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ David D. Day                          Date:      April 23, 2025

Counsel for: State of Hawai'i

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-1248__      Caption: __State of Maryland, et al. v. U.S. Department of Agriculture, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

State of Illinois
(name of party/amicus)


who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.     Does party/amicus have any parent corporations?                ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                  ☐YES ☑NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐ YES ☑ NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Sarah A. Hunger                        Date: _____ April 23, 2025 _____

Counsel for: State of Illinois

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-1248__     Caption: __State of Maryland, et al. v. U.S. Department of Agriculture, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__State of Maryland__
(name of party/amicus)


_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                              ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                                  ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation?                    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
        party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
        caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
        corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational
        victim of the criminal activity and (2) if an organizational victim is a corporation, the
        parent corporation and any publicly held corporation that owns 10% or more of the stock
        of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Julia Doyle _____      Date: _____April 23, 2025_____

Counsel for: State of Maryland _____

- 2 -

[ Print to PDF for Filing ]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>25-1248</u>        Caption: <u>State of Maryland, et al. v. U.S. Department of Agriculture, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Commonwealth of Massachusetts</u>
(name of party/amicus)

_____

 who is _____<u>Appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                           ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                              ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Katherine Dirks                         Date:      April 23, 2025

Counsel for: Commonwealth of Massachusetts

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>25-1248</u>        Caption: <u>State of Maryland, et al. v. U.S. Department of Agriculture, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>State of Michigan</u>
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                          ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                            ☐YES ☑NO
        If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Bryan Davis, Jr.                    Date:      April 23, 2025

Counsel for: State of Michigan

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1248__     Caption: __State of Maryland, et al. v. U.S. Department of Agriculture, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__State of Minnesota__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.     Does party/amicus have any parent corporations?                    ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐YES ☑NO
       If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Liz Kramer _____    Date: _____April 23, 2025_____

Counsel for: State of Minnesota _____

Print to PDF for Filing      Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _25-1248_     Caption: _State of Maryland, et al. v. U.S. Department of Agriculture, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_State of Nevada_
(name of party/amicus)


_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.     Does party/amicus have any parent corporations?                    ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                                         ☐YES ☑NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Heidi Parry Stern _____     Date: _____April 23, 2025_____

Counsel for: State of Nevada _____

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>25-1248</u>       Caption: <u>State of Maryland, et al. v. U.S. Department of Agriculture, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>State of New Jersey</u>
(name of party/amicus)

_____

who is <u>_____Appellee_____</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                  ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                               ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                      ☐YES ☑NO
        If yes, identify entity and nature of interest:




5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:




6.      Does this case arise out of a bankruptcy proceeding?                             ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.




7.      Is this a criminal case in which there was an organizational victim?              ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.




Signature: /s/ Nathaniel Levy                              Date:        April 23, 2025

Counsel for: State of New Jersey

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-1248      Caption: State of Maryland, et al. v. U.S. Department of Agriculture, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

New Mexico
(name of party/amicus)


who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                                ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                                    ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?          ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?          ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Anjana Samant                          Date:      April 23, 2025

Counsel for: New Mexico

- 2 -

Print to PDF for Filing

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-1248__     Caption: __State of Maryland, et al. v. U.S. Department of Agriculture, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__State of New York__
(name of party/amicus)


who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Ester Murdukhayeva _____     Date: _____April 23, 2025_____

Counsel for: State of New York _____

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _25-1248_      Caption: _State of Maryland, et al. v. U.S. Department of Agriculture, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_State of Oregon_
(name of party/amicus)


who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:




3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?                    ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Stacy M. Chaffin                                    Date: _____ April 23, 2025 _____

Counsel for: State of Oregon

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1248__    Caption: __State of Maryland, et al. v. U.S. Department of Agriculture, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__State of Rhode Island__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.  Does party/amicus have any parent corporations? ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Sarah W. Rice                        Date: _____April 23, 2025_____

Counsel for: State of Rhode Island

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>25-1248</u>     Caption: <u>State of Maryland, et al. v. U.S. Department of Agriculture, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>State of Vermont</u>
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.     Does party/amicus have any parent corporations?     ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐YES ☑NO
        If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jonathan T. Rose                    Date:      April 23, 2025

Counsel for: State of Vermont

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1248__    Caption: __State of Maryland, et al. v. U.S. Department of Agriculture, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__State of Wisconsin__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                  ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Brian P. Keenan _____     Date: _____April 23, 2025_____

Counsel for: State of Wisconsin _____

- 2 -

Print to PDF for Filing

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

Page

INTRODUCTION ...............................................................................1

ISSUES PRESENTED FOR REVIEW ...................................................3

STATEMENT OF THE CASE ...............................................................4

    Legal Framework .......................................................................4

        States' Rapid Response Obligations ....................................4

        Termination of Probationary Employees .............................6

    Factual Background ...................................................................10

        The Agencies' Mass Terminations Without Notice.............10

        Spikes in Unemployment and Demand for Public Services ..............13

    Procedural History ...................................................................16

SUMMARY OF ARGUMENT.............................................................17

ARGUMENT ...................................................................................20

I.    THIS COURT REVIEWS THE GRANT OF A PRELIMINARY INJUNCTION FOR ABUSE OF DISCRETION. ...................................................20

II.   THE DISTRICT COURT HAD JURISDICTION OVER THE STATES' CLAIMS..........20

    A.    The States Have Established Article III Standing................21

    B.    Congress Did Not Channel the States' Claims. .................34

III.  THE STATES ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM THAT THE AGENCIES CONDUCTED UNLAWFUL REDUCTIONS IN FORCE..........42

IV.  THE EQUITABLE FACTORS FAVOR THE STATES. .............................46

    A.    The States Have Demonstrated Irreparable Injury.............46

    B.    The Balance of Equities and the Public Interest Heavily Favor a Preliminary Injunction.........................................49

CONCLUSION ................................................................................54

CERTIFICATE OF COMPLIANCE ........................................................................60

CERTIFICATE OF SERVICE...............................................................................61

# TABLE OF AUTHORITIES

Page

## Cases

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)........................35

*Agility Pub. Warehousing Co. K.S.C.P. v. United States*, 969 F.3d
    1355 (Fed. Cir. 2020)..................................................51

*Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*,
    389 F.3d 536 (6th Cir. 2004) ...................................27

*Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748
    (D.C. Cir. 2019) ......................................... 37, 41

*Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023) ................. 34, 37, 39

*Bacardi & Co. Ltd. v. United States Patent & Trademark Office*,
    104 F.4th 527 (4th Cir. 2024) ...................................39

*Bennett v. United States Sec. & Exch. Comm'n*, 844 F.3d 174
    (4th Cir. 2016)............................................ 35, 37

*Biden v. Nebraska*, 600 U.S. 477 (2023) .............................30

*Block v. Cmty. Nutrition Inst.*, 467 U.S. 340 (1984)................41

*Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667 (1986)...........40

*City & County of S.F. v. United States Citizenship & Immigr. Servs*,
    981 F.3d 742 (9th Cir. 2020) ...................................31

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)................33

*Cook County v. Wolf*, 962 F.3d 208 (7th Cir. 2020).................47

*DeOtte v. State*, 20 F.4th 1055 (5th Cir. 2021)................ 29, 48

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) ............. 29, 45

*Dep't of Educ. v. California,* 145 S. Ct. 966 (2025).................50

*Dreher v. Experian Info. Solutions, Inc.*, 856 F.3d 337
    (4th Cir. 2017)............................... 22, 24, 25, 28

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012)........................36

*Ethyl Corp. v. Envt'l Prot. Agency*, 306 F.3d 1144 (6th Cir. 2002) .......................27

*Fed. Election Comm'n v. Akins*, 524 U.S. 1121 (1998)........................ 22, 25, 27, 28

*Food & Drug Admin. v. Alliance for Hippocratic Med.*,
    602 U.S. 367 (2024).................................................................21

*Friends of Animals v. Jewell*, 828 F.3d 989 (D.C. Cir. 2016) ...........................23

*Grae v. Corr. Corp. of Am.*, 57 F.4th 567 (6th Cir. 2023).................................28

*Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649
    (4th Cir. 2019)......................................................................23

*Harty v. W. Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022)...............................23

*Huber v. Simon's Agency, Inc.*, 84 F.4th 132 (3d Cir. 2023) .............................22

*In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013) .................................51

*In re Comm. on the Judiciary, United States House of Reps.*, 951 F.3d 589
    (D.C. Cir. 2020) ...................................................................27

*James v. Von Zemenszky*, 284 F.3d 1310 (Fed. Cir. 2002)........................7

*Kelly v. RealPage Inc.*, 47 F.4th 202 (3d Cir. 2022) ........................ 24, 27

*Koretoff v. Vilsack*, 614 F.3d 532 (D.C. Cir. 2010) ...................................36

*Laufer v. Looper*, 22 F.4th 871 (10th Cir. 2022) ....................................27

*Maxon Marine, Inc. v. Dir., Office of Workers' Comp. Programs*,
    39 F.3d 144 (7th Cir. 1994) ...............................................36

*McGuffin v. Soc. Sec. Admin.*, 942 F.3d 1099 (Fed. Cir. 2019) ........................6, 45

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*,
    915 F.3d 197 (4th Cir. 2019) ...............................................20

*New York v. Biden*, 636 F. Supp. 3d 1 (D.D.C. 2022) ............................30

*New York v. Yellen*, 15 F.4th 569 (2d Cir. 2021).....................................30

*Pub. Citizen v. United States Dep't of Just.*, 491 U.S. 440 (1989)................... 22, 23

*Roe v. Dep't of Def.*, 947 F.3d 207 (4th Cir. 2020) ........................ 20, 49

*Rydholm v. Equifax Info. Servs. LLC*, 44. F.4th 1105 (8th Cir. 2022) ...................27

*Rydie v. Biden,* No. 21-2359, 2022 WL 1153249 (4th Cir. Apr. 19, 2022) ...........37

*Sackett v. Envt'l Prot. Agency*, 566 U.S. 120 (2012)................................................35

*Sampson v. Murray*, 415 U.S. 61 (1974) ...................................................52

*SAS Inst., Inc. v. Iancu*, 584 U.S. 357 (2018) .........................................34

*Shaw v. United States*, 622 F.2d 520 (Ct. Cl. 1980) ..................................................6

*Shays v. Fed. Election Comm'n*, 528 F.3d 914 (D.C. Cir. 2008) ..........................27

*Spokeo v. Robins*, 578 U.S. 330 (2016) ........................................ 22, 23, 24, 26, 28

*Texas v. United States*, 126 F.4th 392 (5th Cir. 2025)................................................29

*Texas v. United States*, 50 F.4th 498 (5th Cir. 2022)................................................30

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)............................ 18, 35, 39

*TransUnion v. Ramirez*, 594 U.S. 413 (2021) .........................................21

*United States v. Fausto*, 484 U.S. 439 (1988) .........................................40

*United States v. Texas*, 599 U.S. 670 (2023) ........................................ 28, 29

*Watt v. Energy Action Educ. Fund*, 454 U.S. 151 (1981)...........................................29

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)......................................20

*Wyoming v. Oklahoma*, 502 U.S. 437 (1992) .........................................29

**Statutes**

5 U.S.C. § 1214(g)(2)................................................................38

5 U.S.C. § 3502 ...............................................................6, 42

5 U.S.C. § 3502(a) ...............................................................8

5 U.S.C. § 3502(d) ................................................................... passim

5 U.S.C. § 3502(d)(1)................................................................8, 26

5 U.S.C. § 3502(d)(1)(B) ...............................................................10

5 U.S.C. § 3502(d)(3)(A) ........................................................ 8, 23, 25, 40

5 U.S.C. § 3502(d)(3)(A)(i) ...................................................4

5 U.S.C. § 3502(d)(3)(B) ...................................... 10, 24, 25

5 U.S.C. § 3502(e) ...............................................................10

5 U.S.C. § 704 .....................................................................39

5 U.S.C. § 7103(a)(1)...........................................................36

5 U.S.C. § 7103(a)(2)...........................................................36

5 U.S.C. § 7105(g)(3)...........................................................39

5 U.S.C. § 7118(a)(7)...........................................................39

5 U.S.C. § 7123(a) ......................................................... 36, 37

5 U.S.C. § 7511(a)(1).............................................................6

5 U.S.C. § 7511(a)(1)(A)(ii)...................................................6

5 U.S.C. § 7511(a)(1)(C)(ii)...................................................6

5 U.S.C. § 7703(a)(1) ..................................................... 36, 37

29 U.S.C. § 2102(a)(2)....................................................9, 37

29 U.S.C. § 2104(a)(5).........................................................38

29 U.S.C. § 2864(a)(2)(A) ......................................................4

29 U.S.C. § 2864(a)(2)(A)(i)(II) .......................................4, 26

29 U.S.C. § 3102(51) ..............................................................5

29 U.S.C. § 3174(a)(2)(A) ................................................4, 40

29 U.S.C. § 3174(a)(2)(A)(i)(II)........................................4, 26

National Defense Authorization Act of 1993, Pub. L. 102-484, § 4433(a)(1)
    (Oct. 23, 1992) ................................................................9

Md. Code Ann., Lab. & Empl. § 11-303 (LexisNexis 2016) ...................5

Md. Code Ann., Lab. & Empl. § 11-304 (LexisNexis 2016) ...................5

N.J. Stat. Ann. § 34:21-5.......................................................5

# Regulations

5 C.F.R. § 315.804 ......................................................................7

5 C.F.R. § 315.801 ......................................................................6

5 C.F.R. § 315.803(a) ..................................................................6

5 C.F.R. § 315.804(a) .......................................................... 6, 7, 42

5 C.F.R. § 315.805 ...................................................................6, 42

5 C.F.R. § 315.806 ......................................................................7

5 C.F.R. § 316.304(b) ..................................................................7

5 C.F.R. § 351.201(a)(2) ...........................................................7, 42

5 C.F.R. § 351.202(a) ..................................................................8

5 C.F.R. § 351.202(b) ..................................................................8

5 C.F.R. § 351.203 ......................................................................7

5 C.F.R. § 351.402 ......................................................................8

5 C.F.R. § 351.403 ......................................................................8

5 C.F.R. § 351.404 ......................................................................8

5 C.F.R. § 351.501 ......................................................................8

5 C.F.R. § 351.501(b) ..................................................................8

5 C.F.R. § 351.502(b) ..................................................................8

5 C.F.R. § 351.801(b) .................................................................10

5 C.F.R. § 351.803(b) ...............................................................8, 23

5 C.F.R. § 351.803(c) .......................................................... 10, 24

20 C.F.R. § 682.302(b) ................................................................5

20 C.F.R. § 682.305(a) ................................................................5

20 C.F.R. § 682.305(b) ................................................................5

**Miscellaneous**

Chris Megerian & Michelle L. Price, *Trump Administration Begins Sweeping Layoffs with Probationary Workers, Warns of Larger Cuts to Come*, Associated Press (Feb. 13, 2025), tinyurl.com/mtzwfc6j ............................................................. 11

Eileen Sullivan, *Government Watchdog Drops Inquiries Into Mass Firings of Probationary Workers*, N.Y. Times (Apr. 21, 2025), tinyurl.com/mjk4j239 ....................................................... 49

H.R. Rep. No. 102-124 (1991) ......................................................... passim

Mem. from Charles Ezell to Heads & Acting Heads of Dep'ts & Agencies 1 (Jan. 20, 2025), tinyurl.com/y4cjp5wh. ........................... 11

Presidential Memoranda, *Extension of Hiring Freeze* (Apr. 17, 2025), tinyurl.com/58xxbzbf ............................................................. 52

S. Rep. No. 102-110 (1991) ......................................................... 9, 38

The White House, *Fact Sheet: President Donald J. Trump Works to Remake America's Federal Workforce* (Feb. 11, 2025), tinyurl.com/3tfbpxwc ............................................................. 43

U.S. Office of Personnel Mgmt., *Summary of Reduction in Force Under OPM's Regulations*, tinyurl.com/9pz287wv ........................... 8

U.S. Office of Personnel Mgmt., *Workforce Reshaping Operations Handbook* 29 (2017), tinyurl.com/2p9meucx ................................... 7

No. 25-1248 (L)

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

**STATE OF MARYLAND,** *et al.*,

*Plaintiffs-Appellees*,

**v.**

**UNITED STATES DEPARTMENT OF AGRICULTURE,** *et al.*,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court for the District of Maryland
(James K. Bredar, District Judge)

_____

## BRIEF OF APPELLEES

_____

## INTRODUCTION

Decades ago, Congress gave states, localities, and federal workers the right to advance warning of mass terminations, in part because states have an obligation to help those workers find new jobs.  H.R. Rep. No. 102-124, at 4 (1991).  Those federally mandated reemployment efforts "cannot be effective unless [state and local] program officials are made aware of . . . large layoffs as soon as possible"— ideally, "a minimum of two to four months" in advance. *Id.* at 4-5.  Because "Federal employees and the communities in which they live should be provided advance notice of impending dislocations," *id.* at 4, Congress required agencies to provide

states with 60 days' notice of large reductions in force ("RIFs"). Otherwise, large RIFs are forbidden.

In February 2025, however, the defendant Agencies initiated the unprecedented and unlawful mass purge of over 24,000 federal probationary employees—without any warning to the plaintiff States. The impact on the States was massive and swift. They were forced to hunt for information about newly jobless residents, redeploy staff to bolster reemployment programs, and address a flood of unemployment compensation and benefit requests. Each unexpected wave of terminations cost the States money and time. Meanwhile, the States absorbed blows to their economies from decreased tax withholdings and individual spending. Recognizing the deepening crisis, the district court restored the status quo ante by enjoining the Agencies from continuing the mass firings unless they follow lawful procedures; staying the illegal terminations; and requiring the Agencies to undo the firings of those employees whose duty station or residence is in one of the States.

Seeking to vacate that carefully tailored remedy, the Agencies claim that the States are constitutionally and statutorily precluded from seeking recourse for these clear violations of federal law. But a party has Article III standing to sue when it suffers concrete harm from deprivation of information, including legally required notice, and the States' injuries are exactly those Congress sought to avoid by enacting the RIF notice requirement. It also defies logic to claim that the States

cannot vindicate their own unique statutory rights simply because some federal employees have a separate administrative path to challenge their individual terminations.

Nor can the Agencies' other arguments be squared with the record or the law. As the district court found in an 85-page decision based on a mountain of evidence, the Agencies' mass firings were RIFs aimed at cutting costs and reorganizing the federal civil service—not flawed for-cause terminations—and their choice to ignore the required procedures did not transform the mass firings into something other than RIFs. Moreover, as the district court recognized, the unannounced terminations have inflicted chaos and unrecoverable costs upon the States. By contrast, the Agencies' claim that they are "unlikely to recover the funds disbursed to reinstated probationary employees," Appellants' Br. 3, 15 (internal quotation marks omitted), disregards that a federal agency is obligated to continue employing its personnel for 60 days while conducting a proper RIF. The only true cost imposed on the Agencies, in other words, is the cost of following the law.

## ISSUES PRESENTED FOR REVIEW

1.    Did the district court properly exercise jurisdiction over the States' claims, where the States demonstrated an Article III informational injury causing concrete harm, and where Congress has not channeled the States' statutory notice-

based claims to an administrative tribunal or otherwise divested the district court of subject matter jurisdiction?

2.     Did the district court properly conclude that the States are likely to succeed on the merits, where the Agencies fired more than 24,000 federal employees without following the statutorily and regulatorily prescribed RIF procedures, including providing 60 days' notice to the States?

3.     Did the district court act within its discretion in concluding that the States had sufficiently demonstrated irreparable harm and that the balance of equities and the public interest supported a limited preliminary injunction?

## STATEMENT OF THE CASE

### Legal Framework

### States' Rapid Response Obligations

Under the Workforce Investment Act of 1998 and the Workforce Innovation and Opportunity Act of 2014, when there is a "mass layoff[]" causing a "substantial increase[] in the number of unemployed individuals" in a jurisdiction, states must carry out "rapid response activities" to assist dislocated workers in obtaining reemployment. [1]  29 U.S.C. § 2864(a)(2)(A)(i)(II); *id.* § 3174(a)(2)(A)(i)(II).  State

---

[1] Rapid response duties imposed on states under § 134(a)(2)(A) of the Workforce Investment Act—referenced in 5 U.S.C. § 3502(d)(3)(A)(i)—still apply under § 134(a)(2)(A) of the Workforce Innovation and Opportunity Act. *Compare* 29 U.S.C. § 2864(a)(2)(A), *with* 29 U.S.C. § 3174(a)(2)(A).

law imposes similar requirements. *See, e.g.*, Md. Code Ann., Lab. & Empl. §§ 11-303, 11-304; N.J. Stat. Ann. § 34:21-5. States' obligations are triggered by the "[a]nnouncement or notification of a mass layoff," 20 C.F.R. § 682.302(b), which is defined as "layoffs affecting 50 or more workers," *id.* § 682.305(b), or fewer if the state's definition has a lower minimum threshold, *id.* § 682.305(a). The purpose of the rapid response system is to reduce reliance on public benefit systems—such as unemployment insurance—and to minimize the impact of mass layoffs on workers, businesses, and communities.

To comply with these mandatory obligations, the States have "rapid response" teams, established under the auspices of their departments of labor, or the equivalent, which implement a coordinated, multi-partner strategy to provide immediate assistance to individuals in advance of and following mass layoffs. (*See, e.g.*, JA81, JA95-96, JA102-103, JA116-117, JA122, JA140-141, JA159, JA163.) The services these teams provide include "onsite contact with employers and employee representatives," "employment and training" activities, "emergency assistance," and "assistance to the local community in developing a coordinated response and in obtaining access to State economic development." 29 U.S.C. § 3102(51); (*see, e.g.*, JA102-103, JA122-123, JA141, JA159, JA164).

## Termination of Probationary Employees

Under federal civil service laws, new employees and certain employees who have changed offices or recently received promotions are subject to probationary periods. *See* 5 U.S.C. § 7511(a)(1); 5 C.F.R. § 315.801. For employees in the "competitive" service (i.e., those hired through an open, competitive process), the probationary period is one year, 5 U.S.C. § 7511(a)(1)(A)(ii); for employees in the "excepted" service (i.e., those appointed through a non-competitive hiring process), the probationary period is two years, *id.* § 7511(a)(1)(C)(ii).[2] A federal agency may terminate a probationary employee for one of three reasons: (1) for conditions arising prior to employment, 5 C.F.R. § 315.805; (2) for cause, *id.* § 315.804(a); or (3) in accordance with a RIF, 5 U.S.C. § 3502.

Office of Personnel Management ("OPM") regulations permit a termination for cause "if the employee fails to demonstrate fully his or her qualifications," 5 C.F.R. § 315.803(a), meaning that the employee displays "inadequacies" in "performance or conduct," *id.* § 315.804(a). An agency terminating a probationary employee for cause "must honestly be dissatisfied with the probationer's conduct or performance after giving him a fair trial on the job." *McGuffin v. Soc. Sec. Admin.*, 942 F.3d 1099, 1102 (Fed. Cir. 2019) (quoting *Shaw v. United States*, 622 F.2d 520,

---

[2] Because the Agencies' mass terminations affected both competitive and excepted service employees, this brief refers to both groups as "probationary employees."

544 (Ct. Cl. 1980)). And the agency must notify the employee in writing "as to why he is being separated," including "the agency's conclusions as to the inadequacies of his performance or conduct," and "the effective date of the action." 5 C.F.R. § 315.804(a); *see id.* § 316.304(b) (explaining that employees are "entitled to the procedures set forth in § 315.804" during "the trial period"). Probationary employees terminated for inadequate performance or conduct have limited rights to appeal. *See id.* § 315.806.

A RIF, by contrast, occurs when an agency "releases" employees "because of lack of work; shortage of funds; [or] . . . reorganization," among other reasons. *Id.* § 351.201(a)(2); *see id.* § 351.203 (defining a reorganization as "the planned elimination, addition, or redistribution of functions or duties in an organization"). It "is not an adverse action against a particular employee, but is directed solely at a position within an agency." *James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002). Agencies wishing to separate employees under these circumstances are required to follow regulations governing RIFs. 5 C.F.R. § 351.201(a)(2); *see id.* pt. 351 (setting forth the regulatory requirements governing RIFs).

Preparations for RIFs are lengthy, often taking upwards of 12 to 18 months. (JA235-236.) Agencies must ensure personnel records are complete and accurately reflect retention preferences, and they must establish "competitive areas" within which "employees compete for retention." U.S. Office of Personnel Mgmt.,

7

*Workforce Reshaping Operations Handbook* 29 (2017), tinyurl.com/2p9meucx; *see* 5 C.F.R. § 351.402.  A competitive area may be as small as an "organization in a local commuting area that is separate from other agency organizations" or as large as an entire agency.  U.S. Office of Personnel Mgmt., *Summary of Reduction in Force Under OPM's Regulations*, tinyurl.com/9pz287wv.

Once an agency establishes a competitive area, the agency compiles a retention register of employees in each competitive level.  5 C.F.R. §§ 351.403, 351.404.  It then ranks employees for retention based on tenure group, length of service, veteran preference, and performance.  *See* 5 U.S.C. § 3502(a); 5 C.F.R. §§ 351.501-351.504.  These regulations extend to probationary employees and grant them some retention preferences.  *See* 5 C.F.R. § 351.202(a), (b); *id.* § 351.501(b); *id.* § 351.502(b).

When a RIF will result in the termination of "50 or more employees in a competitive area," an agency must "provide written notification of the action, at the same time it issues specific notices of separation to employees" to the "State or the entity designated by the State to carry out rapid response activities under title I of the Workforce Investment Act of 1998," and to the "chief elected official of local government(s) within which these separations will occur."  *Id.* § 351.803(b); *see* 5 U.S.C. § 3502(d)(3)(A).  Absent notice, "an employee may not be released[] due to a reduction in force."  *Id.* § 3502(d)(1).

The notice provision is meant to ease the burdens on state and local governments by providing them with written warning before an agency conducts a RIF. *See* H.R. Rep. No. 102-124, at 6-7. In response to unexpected mass federal layoffs that triggered public concern, Congress enacted the requirement that federal agencies "provide[] advance notice of impending dislocations that is at least comparable to that provided to private sector workers pursuant to [the Worker Adjustment and Retraining Notification ("WARN") Act[3]]." H.R. Rep. No. 102-124, at 4; *see also* S. Rep. No. 102-110, at 2 (1991) (similar).[4] The relevant committee reports noted that the "benefits of advance notice more than outweigh[ed] the costs." H.R. Rep. No. 102-124, at 5; S. Rep. No. 102-110, at 3. Advance notice, the reports observed, "help[ed] dislocated workers find comparable jobs more quickly," with "[a]dvance notice of as little as one month reduc[ing] the duration of unemployment among displaced workers by as much as 27%," H.R. Rep. No. 102-124, at 4-5; *see* S. Rep. No. 102-110, at 3 (same). This is in part because of states' statutorily mandated "rapid response program[s]," which "cannot be effective unless program

-----

[3] The WARN Act requires certain private employers that intend to carry out mass layoffs to provide 60 days' notice "to the State or entity designated by the State to carry out rapid response activities" under the Workforce Innovation and Opportunity Act. 29 U.S.C. § 2102(a)(2).

[4] The legislative text considered in these congressional reports was enacted as § 4433(a)(1) of the National Defense Authorization Act of 1993, Pub. L. 102-484 (Oct. 23, 1992).

officials are made aware of . . . large layoffs as soon as possible."  H.R. Rep. No. 102-124, at 4-5.

Congress thus required that an agency generally provide notice 60 days before any employee is terminated as part of a large RIF.  *See* 5 U.S.C. § 3502(d)(1)(B).  A shorter notice period may apply when a RIF is caused by circumstances "not reasonably foreseeable"—but even then, the period must "cover at least 30 full days before the effective date of release."  5 C.F.R. § 351.801(b); *see* 5 U.S.C. § 3502(e); H.R. Rep. No. 102-124, at 5 ("Notice periods of only two or three weeks have a negligible effect on reducing the duration of unemployment of displaced workers."). The notice provided to states and local officials must detail (1) the number of employees to be separated, broken down by geographic area; (2) when those separations will occur; and (3) any other information that may facilitate the delivery of state and local services to affected workers.  *See* 5 U.S.C. § 3502(d)(3)(B); 5 C.F.R. § 351.803(c).

**Factual Background**

**The Agencies' Mass Terminations Without Notice**

The current Administration aims "to dramatically reduce the size of the federal workforce."  (JA609.)  Consistent with that goal, immediately after taking office, Acting OPM Director Charles Ezell directed agency heads to "identify all employees on probationary periods," "send a report to OPM listing all such

employees," and "promptly determine whether those employees should be retained." Mem. from Charles Ezell to Heads & Acting Heads of Dep'ts & Agencies 1 (Jan. 20, 2025), tinyurl.com/y4cjp5wh.

On February 13, OPM met with agency heads and ordered the mass termination of probationary employees. Chris Megerian & Michelle L. Price, *Trump Administration Begins Sweeping Layoffs with Probationary Workers, Warns of Larger Cuts to Come*, Associated Press (Feb. 13, 2025), tinyurl.com/mtzwfc6j. OPM reiterated that demand a day later and drafted a template termination letter for the Agencies to use (JA234-235), informing the employees that their "unsatisfactory performance was the reason for removal" (JA227).

Agencies complied with OPM's directive by firing probationary employees by the hundreds and, in many instances, thousands. The day of OPM's order, the Department of Energy terminated nearly 2,000 employees; the Department of Veterans Affairs terminated over 1,000 employees; and the Department of Agriculture terminated around 3,400 employees. (JA47-48.) The next day, the Department of Health and Human Services fired approximately 1,300 employees. (JA49.) Over the next few days, the Department of the Interior fired 1,000 employees; the Department of Agriculture fired 2,000 additional employees; and the Department of the Treasury terminated over 6,000 employees. (JA49.) As of the filing of the complaint, the Agencies had fired more than 24,000 probationary

employees.  (JA51.)  Each wave of terminations occurred without advance notice to the States.

These terminations were not based on individualized findings on employee performance.  Instead, the Agencies largely relied on OPM's template language, which stated that the employees were being terminated because their "ability, knowledge and skills do not fit the Agency's current needs, and [their] performance has not been adequate to justify further employment."  (JA261; *see* JA234-235.)  As a former OPM director explained, it is "not possible . . . for so many federal agencies to have independently and simultaneously decided to terminate large numbers of their workers," or "to have done proper assessments of all of these employees."  (JA694; *see* JA235 (similar).)  In fact, many employees purportedly terminated for unsatisfactory performance had recently received stellar performance reviews.  (*See, e.g.*, JA340 ("Outstanding."); JA349 ("Exceeds Expectations.").)

Leadership at one agency told its employees that their termination letters were "boilerplate" provided by OPM and that they were "following orders" and had "no choice."  (JA633-634.)  The leadership's initial decision to retain probationary employees had been overruled by OPM, which directed the agency to "remove probationers" and provided them with only two justifications for these removals: "performance or conduct."  (JA655, 659; *see* JA227, JA233.)  The agency ultimately opted for "performance" to preserve terminated employees' ability to "apply for

unemployment." (JA655, JA659, JA674-675.) Leadership at another agency also "discussed openly in meetings" that it "did not review or consider the actual job performance or conduct" of any terminated probationary employee. (JA235; *see* JA229 (similar regarding terminations at another agency).) Some termination letters even stated that the employee was being fired "per OPM instructions." (JA699.)

In response to state unemployment claim investigations, several agencies reported that the terminations were due to a "reduction in force" or a "permanent lack of work due to a change in Presidential Administration." (JA91.) One agency's termination email even instructed employees to "direct [their] inquiries to rif@gsa.gov." (JA723.) As another agency's Human Capital Officer observed, OPM's directive was "plainly an effort to reduce headcount" but "without following the rules for a RIF." (JA235; *see* JA230 (explaining that the terminations were "a reduction in force" without following the applicable RIF procedures).)

**Spikes in Unemployment and Demand for Public Services**

In the wake of these mass terminations, many States saw significant increases in unemployment claims filed by former federal employees—up several hundred percent from the same period last year. (*See, e.g.*, JA83, 89 (30-60 claims *per day*, or a 330% increase, in Maryland); JA106 (149% increase in California); JA114 (almost the same number of claims filed during the first couple of months of 2025 as in all of 2024 in Illinois); JA142 (273% increase in New Jersey).) The States'

departments of labor, however, received no advance notice of these terminations. (*See, e.g.*, JA82, JA97, JA103, JA117, JA123, JA142, JA159, JA164.) This has imposed significant burdens on the States. Because federal grants frequently do not cover the full cost of unemployment benefits programs, states cover shortages with their own funds. (*See, e.g.*, JA86-87.) And state law generally requires unemployment claims examiners to engage in a labor-intensive process, including fact-finding interviews and written dispositions, to determine eligibility for unemployment benefits if an employee was fired for cause. (*See, e.g.*, JA89-93, JA106-108, JA113-114, JA129-130, JA145-146, JA250.)

To fulfill their federally mandated rapid response duties, the States have also devoted significant additional resources to contact the Agencies, monitor public reporting, and conduct mass outreach to identify affected workers. (*See, e.g.*, JA82-84, JA142-143.) Some States diverted staff from pressing projects to retrain them to provide rapid response services. (*See, e.g.*, JA84-85, JA117-118, JA125-126.) Others created new websites or set up dedicated phone lines to assist terminated employees in seeking unemployment compensation and reemployment resources. (*See, e.g.*, JA85, JA104, JA117.) Due to the lack of notice, the States' response has been less effective and costlier to the States than if the required notice had been provided. (*See, e.g.*, JA104, JA117-118.) And the States still do not know exactly

how many probationary employees were terminated by each agency in each geographic area.

The States face a variety of additional harms. Without employer-funded health insurance, many terminated employees expect to enroll in state-administered insurance programs, resulting in increased costs to the States from processing an influx of applications and providing services. (*See, e.g.*, JA289, JA340, JA349.) The States also face operational harm to state programming that depends on federal workers who were unlawfully fired. (*See, e.g.*, JA133-137, JA154, JA171.) For example, some of the States' departments of health rely on current federal employees recruited from the Centers for Disease Control and Prevention's Public Health Associate Program to help support core public health functions. (*See, e.g.*, JA151-155, JA169.) Beyond that, the mass layoffs will continue to cause irreparable harm to the States' tax bases. (*See, e.g.*, JA241-242.) The District of Columbia, for instance, estimates that its lost income tax revenue during the 60-day notice period is at least hundreds of thousands of dollars. (*See* JA196-197, JA208-217.) These costs likely would have been mitigated by notice, given that, with the help of the States, some employees would have obtained alternative employment before their termination. (*See* JA197-198.)

**Procedural History**

On March 6, 2025, the States sued to challenge the mass termination of probationary employees without proper notice. (JA22-76.) The next day, the States requested that the district court temporarily restrain further unlawful terminations of probationary employees, reinstate unlawfully terminated probationary employees, and require the Agencies to provide information to the States and the district court through regular status reports. (ECF 4.) The district court granted the States' request and issued a nationwide temporary restraining order ("TRO") as to all but three defendants.[5] (JA531-534.)

The Agencies requested a stay of the TRO in this Court, Dkt. 8, which denied the request four days later, Dkt. 20. The same day they requested the stay, the Agencies filed a status report advising the district court that they had rescinded many of the terminations. (JA537-540.) In that report, several of the Agencies acknowledged that nearly all the terminations were for non-performance reasons. For example, the Department of Homeland Security reversed 313 probationary employee terminations and excluded from any reinstatement efforts those "terminated in individualized actions based on their performance"—thus leaving no

---

[5] The district court excluded the Department of Defense, the National Archives and Records Administration, and OPM from the TRO without prejudice to their inclusion in subsequent relief. (JA515.)

doubt that the 313 employees were terminated for non-performance reasons. (JA554; *see* JA558 (similar); JA584 (similar).)

On April 1, the district court granted the States' preliminary injunction motion with respect to all but one defendant, the National Archives and Records Administration. (JA990-94.) It narrowed the relief "to employees who live or work in Plaintiff States." (JA977.) The district court did not prevent the Agencies from terminating employees for individualized cause or from conducting future RIFs, provided that they follow lawful procedures and notify the States. (JA982, JA991.) After the district court denied the Agencies' motion for a stay (ECF 134), the Agencies noticed an appeal (JA995-997) and again sought a stay from this Court, Dkt. 34.

On April 9, over the dissent of Judge Benjamin, a panel of this Court stayed the preliminary injunction. Dkt. 42. The States immediately moved to administratively stay that decision pending rehearing en banc. Dkt. 45. The panel declined the States' request, again over Judge Benjamin's dissent. Dkt. 48. The States subsequently filed an emergency petition for rehearing en banc, which remains pending. Dkt. 51.

## SUMMARY OF ARGUMENT

The States have demonstrated that they are likely to succeed on the merits of their claim that the Agencies engaged in widespread unlawful RIFs without

providing statutorily required advance notice and information to the States. As a result of that unlawful conduct, the States experienced irreparable harm, which the district court's carefully tailored preliminary injunction properly remedied by restoring the parties' relationship to the status quo ante.

1. The district court properly exercised jurisdiction over the States' claims. First, the States have established Article III standing. Because of the deprivation of information to which the States were legally entitled, the States experienced concrete, here-and-now harms, including the sudden need to provide rapid response services, retrain and reallocate their employees, triage spiking unemployment claims, respond to gaps in federal services, and absorb the lack of income tax receipts. Those injuries are cognizable under binding precedent. In enacting the advance notice requirements in the RIF statute, Congress sought to protect the States against the precise harms that they have experienced here from the Agencies' statutory violation.

Next, under the well-established *Thunder Basin* test,[6] the States' claims should not be channeled to an administrative tribunal. The States cannot file claims in any relevant administrative agency, and channeling the States' claims would

_____

[6] *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).

deprive them of review in *any* forum for a clear statutory violation. The law does not require that result.

2. The States are also likely to succeed on the merits. The law is clear: Congress requires agencies to notify states and local governments 60 days in advance of a planned RIF. The Agencies did not do so here. Moreover, the district court did not clearly err in determining that the Agencies conducted RIFs and that their claims of for-cause terminations were pretextual. As a result, the Agencies violated the law.

3. The equitable factors overwhelmingly favor the States. The Agencies' decision to gut the federal workforce without following the requisite procedures has irreparably injured the States. It has forced the States to shoulder the administrative burden of locating, supporting, and processing unemployment benefits claims made by thousands of unlawfully terminated employees without critical, time-sensitive information. In addition, there is no public interest in unlawful government action. And any burden to the Agencies from the preliminary injunction is modest. The injunction covers only the plaintiff States and still permits for-cause terminations and lawfully executed RIFs. Because federal law already requires an agency to continue employing its personnel while conducting a proper RIF, the only cost imposed on the Agencies is that imposed by Congress.

The judgment of the district court should be affirmed.

# ARGUMENT

## I. THIS COURT REVIEWS THE GRANT OF A PRELIMINARY INJUNCTION FOR ABUSE OF DISCRETION.

A party "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This Court, in turn, reviews the decision to grant a preliminary injunction for abuse of discretion. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 213 (4th Cir. 2019). "[A]buse of discretion is a deferential standard, and [this Court] may not reverse so long as the district court's account of the evidence is plausible in light of the record viewed in its entirety." *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020) (first alteration in original) (internal quotation marks omitted). Only a "clear error in factual findings or a mistake of law is grounds for reversal." *Id.* (internal quotation marks omitted).

## II. THE DISTRICT COURT HAD JURISDICTION OVER THE STATES' CLAIMS.

The Agencies advance two jurisdictional arguments: first, that the States lack Article III standing, and second, that the States' claims must be channeled to an administrative tribunal. The district court properly rejected both.

## A.    The States Have Established Article III Standing.

The district court correctly concluded that each State has Article III standing. To establish standing, a plaintiff must show "(i) that [it] has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused . . . by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 380 (2024). The district court spent nearly 20 pages detailing the basis for the States' standing, setting forth ample evidence of concrete harms that were caused by the Agencies' failure to follow statutorily prescribed notice procedures. (JA915-936.) That conclusion was correct on both the law and the facts.

The States have demonstrated an informational injury-in-fact. Contrary to the Agencies' characterization, this injury consists of more than just the standalone absence of information. Appellants' Br. 25-26. Rather, what began as a deprivation of information that the Agencies were statutorily required to provide at a particular time ultimately resulted in the States experiencing concrete, here-and-now harms. (*See* JA933.) Those harms are cognizable under Article III.

The Agencies focus on the concreteness element of injury-in-fact: the requirement that the alleged injury be "real" as opposed to "abstract." *TransUnion v. Ramirez*, 594 U.S. 413, 424 (2021). This Court has held that an informational injury constitutes a concrete Article III injury-in-fact when (1) there is a "lack [of]

access to information to which [one] is legally entitled" and (2) "the denial of that information creates a 'real' harm with an adverse effect." *Dreher v. Experian Info. Solutions, Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (citing *Spokeo v. Robins*, 578 U.S. 330, 340 (2016)). That two-pronged approach accords with the Supreme Court's informational injury jurisprudence. *See, e.g.*, *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 13-14, 21 (1998) (concluding that the agency's "political committee" determination exempting an organization from disclosing its membership, contributions, and expenditures imperiled plaintiffs' ability to "evaluate candidates for public office"); *Pub. Citizen v. United States Dep't of Just,*, 491 U.S. 440, 448-49 (1989) (reasoning that the Department of Justice's denial of information on judicial candidates prevented plaintiffs from "participat[ing] more effectively in the judicial selection process"); *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 145-46 (3d Cir. 2023) (characterizing *Akins* and *Public Citizen* as the Supreme Court's "seminal opinions [holding] that even the nondisclosure of information can sometimes constitute a 'concrete' injury").

To determine whether a party has suffered cognizable harm from the deprivation of information to which it is legally entitled, this Court and the Supreme Court "look to a variety of sources," including the "judgment of Congress." *Dreher*, 856 F.3d at 344-45 (quoting *Spokeo*, 578 U.S. at 340). Because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements,

its judgment is . . . instructive and important." *Spokeo*, 578 U.S. at 341. The scope of the harm inquiry thus turns (in part) on the nature of the statutory disclosure provision at issue. In some instances, a plaintiff suffers the type of harm Congress sought to remedy when it simply "s[eeks] and [is] denied specific agency records." *Pub. Citizen*, 491 U.S. at 449. In others, like this case, a plaintiff may allege that nondisclosure has caused it to suffer the kind of harm that prompted Congress to create the disclosure requirement. *See Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016); *see also Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 654 (4th Cir. 2019) ("Inability to obtain information is sufficiently concrete to constitute injury in fact only when the information has some relevance to the litigant."); *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (similar).

Here, the States have satisfied both requirements for a cognizable Article III informational injury. The Agencies first failed to provide the States with the required 60 days' notice that they intended to conduct large-scale RIFs affecting probationary employees in the States' jurisdictions. The Agencies thereby deprived the States of substantive information related to those RIFs that is required by federal law. *See* 5 U.S.C. § 3502(d)(3)(A); 5 C.F.R. § 351.803(b). And contrary to the Agencies' continued (and incorrect) representations that the States "do not allege that any information is now being withheld from them," Appellants' Br. 26, the States are *still* missing statutorily required information—specifically, the numbers

of terminated employees broken down by geographic area, as well as other information that would help the States locate and provide services to those employees. *See* 5 U.S.C. § 3502(d)(3)(B); 5 C.F.R. § 351.803(c). Knowing that *some* employees were terminated by federal agencies, some of which are in the States' jurisdictions, is not the same thing as knowing which agency terminated the employees, when it did so, how many employees it terminated, and where those employees are located. It is thus incorrect that the States' "informational injury no longer exists." Appellants' Br. 26.

The Agencies' clear statutory violation resulted in substantial pocketbook harms and resource strains to the States, the record evidence of which is overwhelming. *See Dreher*, 856 F.3d at 346 (requiring a statutory violation and "a concrete and adverse effect"). The States' harms are "real, [] not abstract," *Spokeo*, 578 U.S. at 340 (internal quotation marks omitted), and "[w]hether framed as 'adverse effects' or a 'downstream consequence,' the upshot is the same," *Kelly v. RealPage Inc.*, 47 F.4th 202, 213 (3d Cir. 2022) (alteration and citation omitted). They include (1) costs from the hasty rollout of rapid response protocols, including retraining and reallocating state employees, creating dedicated websites and phone lines, and contacting federal agencies for information; (2) burdens associated with processing unanticipated and "sharp" surges in unemployment claims, including time-consuming administrative investigations into benefit eligibility; (3) sudden

disruptions to state programs that depend on federal workers who were embedded within state agencies; and (4) unexpected financial harms from decreased tax revenue and increased reliance on state social service programs. (JA916-923.)

These are exactly the sorts of harms Congress meant to forestall by requiring warning to the States before an agency conducts mass terminations. *See Dreher*, 856 F.3d at 345-46; *Akins*, 524 U.S. at 24-25 (asking whether the failure to provide information is "directly related to" the purpose of the statute). The history and structure of the RIF notice provision confirms as much: In the face of unexpected closures of military bases resulting in thousands of displaced federal workers, Congress enacted a comprehensive statutory process by which federal agencies must ease the burdens on states and localities by providing them written notice before conducting mass layoffs. *See* H.R. Rep. No. 102-124, at 6-7 (relying on testimony from state and local employment services and job training offices in evaluating the impact of RIFs on employees and governments); 5 U.S.C. § 3502(d)(3)(A). In creating this process, Congress went beyond just requiring notice itself; it required federal agencies to disclose information that would facilitate the delivery of state and local services to the affected workers and help them to find new work *before* they become unemployed. *See* 5 U.S.C. § 3502(d)(3)(B); (*see also* JA438 ("[The Agencies do] not disput[e] that the purpose is to allow states to participate in

assisting individuals in their states with relocating employees, helping them find some sort of a new role.")).

These mandatory notice and information provisions do not operate in a vacuum. By design, they are tied directly to states' obligations to carry out "rapid response activities" to assist dislocated workers in obtaining reemployment when an agency decides to conduct a "mass layoff." 29 U.S.C. § 2864(a)(2)(A)(i)(II); *see id.* § 3174(a)(2)(A)(i)(II). Congress linked these responsibilities (one for agencies and one for states) to reduce reliance on public benefit systems—such as unemployment insurance—and to minimize the impact of mass layoffs on workers, businesses, and communities. Absent notice to states, Congress decided that "an employee may not be released[] due to a reduction in force," 5 U.S.C. § 3502(d)(1), because the resultant harm would exacerbate the blow of already devastating sudden mass layoffs. H.R. Rep. No. 102-124, at 5 ("Advance notice is a *necessary precondition* in order for it to be possible to begin adjusting for the impending dislocation *before* the dislocation occurs." (emphasis added)). That considered judgment is "instructive and important" for a court's analysis of injury-in-fact. *Spokeo*, 578 U.S. at 341.

Other federal courts of appeals have likewise concluded that the "depriv[ation] of information to which [one] is legally entitled" constitutes a sufficiently concrete informational injury when that omission causes "adverse effects" and the information has "some relevance" to an interest of the litigant that

the statute was intended to protect. *Kelly*, 47 F.4th at 213 (alterations in original) (quoting *Laufer v. Looper*, 22 F.4th 871, 880-81 & n.6 (10th Cir. 2022)) (collecting cases); *see also, e.g.*, *Shays v. Fed. Election Comm'n*, 528 F.3d 914, 923 (D.C. Cir. 2008) (finding that the agency's regulation of presidential candidates' coordinated communications "illegally denie[d]" plaintiff information required to be disclosed and prevented him from "evaluat[ing] the role that [outside groups'] financial assistance might play in a specific election" (internal quotation marks omitted)); *Ethyl Corp. v. Envt'l Prot. Agency*, 306 F.3d 1144, 1148 (6th Cir. 2002) ("[A] denial of access to information can work an 'injury in fact' for standing purposes, at least where a statute (on the claimants' reading) requires that the information 'be publicly disclosed' and there is 'no reason to doubt their claim that the information would help them.'" (quoting *Akins*, 542 U.S. at 21)); *Rydholm v. Equifax Info. Servs. LLC*, 44. F.4th 1105, 1108 (8th Cir. 2022) (holding that plaintiff's claim of "tangible financial harm and intangible emotional injury" as a result of a violation of the Fair Credit Reporting Act is sufficient to establish standing); *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 542 (6th Cir. 2004) (finding that the "lack of information" required to be disclosed under the Clean Water Act "deprived [plaintiff] of the ability to make choices about whether it was 'safe to fish, paddle, and recreate in this waterway'"); *cf. In re Comm. on the Judiciary, United States House of Reps.*, 951 F.3d 589, 622 (D.C. Cir. 2020) (Rao, J., dissenting)

("Because [federal law] created affirmative disclosure obligations, a plaintiff could establish an Article III injury by alleging a refusal to provide the required information.").

Thus, "a chorus of precedent all sings the same tune: to have standing, litigants must have suffered adverse effects from the denial of information." *Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 571 (6th Cir. 2023). The States have demonstrated their statutory entitlement to certain information and resultant "real harm[s] with an adverse effect." *Dreher*, 856 F.3d at 345 (internal quotation marks omitted); *see also Akins*, 524 U.S. at 20-25. And the States' harms have a nexus to the concrete interest Congress sought to protect. *Spokeo*, 578 U.S. at 342.

The Agencies offer a variety of arguments in response, none of which is persuasive. First, relying on a single footnote in *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023), the Agencies claim that the States suffer no cognizable injury from the unlawful RIFs. They appear to believe that *Texas* bars all claims based on "downstream harm on the states' budgets and resources." Appellants' Br. 22-23. The decision does no such thing. *Texas* involved a state's challenge to the federal government's enforcement priorities regarding non-parties. In that context, the state's claimed injuries from non-enforcement were, as the Court reasoned, likely attenuated and peripheral and not of "the kind redressable by a federal court." *Texas*, 599 U.S. at 678. *Texas,* however, does not stand for the proposition that state

budgetary harms are *never* sufficient for standing purposes.  Nor could it—at least not without upending decades of standing precedent in a footnote.  *See, e.g.*, *Dep't of Com. v. New York*, 588 U.S. 752, 767 (2019) (states had standing because "they w[ould] lose out on federal funds" as a result of the government adding a citizenship question to the census); *Wyoming v. Oklahoma*, 502 U.S. 437, 448 (1992) (state had standing based on "a direct injury in the form of a loss of specific tax revenues"); *Watt v. Energy Action Educ. Fund*, 454 U.S. 151, 161 (1981) (state had standing where the federal government's bidding system might not produce "a fair market return" on oil and gas leases and the state would receive some share of the profits).

Indeed, the Fifth Circuit recently rejected the very argument that the Agencies pitch here.  *See Texas v. United States*, 126 F.4th 392 (5th Cir. 2025).  As the Fifth Circuit explained, the Supreme Court's *Texas* footnote is "tentative and equivocal," *id.* at 410; it says only that a "claim for standing *can* become *more* attenuated" when it relies on the indirect effects of federal action, *id.* at 410 n.20 (discussing *Texas*, 599 U.S. at 680 n.3).  At most, the footnote stands for the commonsense proposition that Article III standing may be harder to establish when the injuries at issue are speculative or when they result from the regulation of third parties.  *See Texas*, 126 F.4th at 409.  Thus, in *Texas*, the Supreme Court "announce[d] no broad new rule," *id.* at 411, and the case does not preclude the States from seeking redress for financial and resource harms flowing from unlawful federal action.  *See, e.g.*, *DeOtte v. State*,

20 F.4th 1055, 1069-70 (5th Cir. 2021) (agreeing with multiple circuits' holdings that states had standing to challenge federal healthcare regulations that would result in greater demand on state services); *New York v. Yellen*, 15 F.4th 569, 577 (2d Cir. 2021) (states had standing to challenge a federal tax deduction cap, which in turn caused "specific lost [state] tax revenues"); *New York v. Biden*, 636 F. Supp. 3d 1, 31-32 (D.D.C. 2022) (state had shown irreparable harm from postal service policies that caused "direct financial costs to state and local agencies" and "administrative burdens . . . on state and local agencies").

Here, the States are directly implicated in two respects: they are the required recipients of the statutorily mandated warnings, and they are required by federal law to provide rapid response services when the Agencies conduct RIFs. Thus, the States suffered direct harm from the violations—for instance, by being forced to retrain or reallocate staff, incur costs from triaging increased unemployment and benefits claims and investigations, and handle the shortfall from unexpected declines in tax withholdings from federal employees. Legions of federal cases have found similar harms sufficient. *See, e.g.*, *Biden v. Nebraska*, 600 U.S. 477, 490 (2023) (state had standing to challenge federal student-loan forgiveness program because it would cause a state nonprofit government corporation to lose fees); *Texas v. United States*, 50 F.4th 498, 518 (5th Cir. 2022) (state had standing to challenge the federal Deferred Action for Childhood Arrivals program because it had shown that the

program increased costs in providing social services to program beneficiaries); *City & County of S.F. v. United States Citizenship & Immigr. Servs*, 981 F.3d 742, 754 (9th Cir. 2020) (state had standing to challenge public charge rule because it created a pocketbook injury by shifting persons from federal aid to state aid programs). The *Texas* footnote does not change the analysis.

Second, the Agencies contend that the States are inserting themselves into the federal employer-employee relationship and relying on harms that belong to the employees. If the States have standing here, the Agencies fear that courts would have authority "to supervise nearly any federal government action" and "superintend the federal government's employment relationships." Appellants' Br. 1, 22. Those fears are unfounded. The States do not seek to stand in the shoes of employees— for instance, by rectifying employees' right to notice, or litigating their places on a retention register, or advancing any claim that an individual employee might make. Instead, the States rely only on their own right to notice and the harm to their fiscs and operations that have resulted from the lack of warning. And because the States rely on a specific statutory right to notice and direct pocketbook harms flowing from the Agencies' failure to provide that notice, this case will not invite meddling with the other intricacies of federal human resources management—or with other federal decisions where the government owes states no duty.

Third, the Agencies claim that there is a mismatch between the States' informational injury and the remedy of temporary reinstatement of probationary employees. This argument fails in several respects. To start, if the Agencies take issue with the scope of the injunction, that goes to the merits of the district court's order—not to its jurisdiction to consider this case in the first place. Beyond that, the Agencies' current complaint about reinstatement contradicts their own position below that "the States' asserted injuries could only be conceivably redressed by [probationary employees'] reinstatement." (JA934.) The district court correctly relied upon this significant concession in fashioning relief that would redress the States' injuries.

Even more, the Agencies' scope-of-relief argument ignores the purpose of the RIF advance notice requirement, which is to allow the States time to assist federal employees *before* they are terminated. Ideally, the States should be able to locate new employment for many employees before they would need to rely on unemployment insurance or other public benefits. That is precisely how Congress designed the process to function. And the district court's tailored remedy advances Congress's objective. Again, with proper advance notice, the Agencies remain free to institute RIFs at any time. Thus, there is no mismatch between the express right and the tailored remedy here—it simply restores lost time to the States and requires the Agencies to furnish appropriate notice.

Finally, the Agencies repeatedly invoke as "similar" the Supreme Court's brief order staying a preliminary injunction pending appeal in *Office of Personnel Management v. American Federation of Government Employees*, No. 24A904, 2025 WL 1035208 (U.S. Apr. 8, 2025) (Mem.) ("*AFGE*"). *See* Appellants' Br. 3, 15, 39-40. *AFGE* did involve the unlawful termination of probationary employees by the federal government. But the preliminary injunction at issue in that case was issued for the benefit of a different class of plaintiffs (nonprofit organizations) and, unlike this case, alleged non-statutory theories of injury. The only conceivable relevance of the Supreme Court's *AFGE* order is its citation to *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), which held that a plaintiff may not rest its claim on a "speculative chain of possibilities." *Id.* at 414. In *AFGE*, for example, the federal government characterized the nonprofit plaintiffs' harms as "indirect" and "a far cry from establishing that the challenged terminations *themselves* caused a particular" harm. *See* App. to Stay Injunction Issued by U.S. Dist. Ct. for N.D. Cal. & Request for Immediate Admin. Stay, No. 24A904, 2025 WL 913208, at *16-17 (Mar. 13, 2025). Instead, the federal government argued that the nonprofits' alleged harms rested on the likelihood of "less reliable" government services for their members, "trashed scenic viewpoints" as a result of low staffing at national parks, and "staffing issues" that could prevent agencies from timely responding to FOIA requests. *Id.* (internal quotation marks omitted).

Here, the States' injuries are anything but speculative, and there is no dispute that they resulted directly from the Agencies' violation of the statutory RIF procedures. Moreover, the Supreme Court was careful to confine the reasoning in *AFGE* to "not address the claims of the other plaintiffs" and disclaimed its application to theories of standing that "did not form the basis of the District Court's preliminary injunction." 2025 WL 1035208, at *1. Thus, despite concerning the same underlying federal action, *AFGE* is inapposite here.

**B.    Congress Did Not Channel the States' Claims.**

Contrary to the Agencies' contentions, neither the Federal Service Labor-Management Relations Statute nor the Civil Service Reform Act ("CSRA") precludes jurisdiction. *See* Appellants' Br. 28-35. The Agencies ask this Court to be the first in the country to hold that the CSRA precludes non-union, non-employee plaintiffs, like the States, from seeking redress in any forum for a clear statutory violation of their rights that has caused concrete harm. The Court should decline. The States' claims here are more akin to WARN Act violations, which are heard in federal court, than to an employee- or union-led CSRA claim.

Any jurisdictional analysis must start with "the strong presumption in favor of judicial review" that can be overcome only by "clear and convincing indications that Congress meant to foreclose review." *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 370 (2018) (internal quotation marks omitted); *cf. Axon Enter., Inc. v. Fed. Trade*

*Comm'n*, 598 U.S. 175, 207 (2023) (Gorsuch, J., concurring) (questioning federal courts' "authority to engage in this business of jurisdiction-stripping-by-implication").  This presumption has special force in the context of the Administrative Procedure Act ("APA"), *see Sackett v. Envt'l Prot. Agency*, 566 U.S. 120, 129 (2012), which has "generous review provisions" that "cover a broad spectrum of administrative actions." *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967).

To overcome this presumption, the Agencies must satisfy the two-step framework set forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).  Under that framework, a court first asks "whether Congress's intent to preclude district-court jurisdiction is fairly discernible in the statutory scheme." *Bennett v. United States Sec. & Exch. Comm'n*, 844 F.3d 174, 181 (4th Cir. 2016) (internal quotation marks omitted).  It next asks "whether plaintiffs' claims are of the type Congress intended to be reviewed within this statutory structure," considering whether (1) "the statutory scheme foreclose[s] all meaningful judicial review," (2) "the extent to which the plaintiff's claims are wholly collateral to the statute's review provisions," and (3) "whether agency expertise could be brought to bear on the . . . questions presented." *Id.* (alterations in original) (internal quotation marks omitted).  "[M]eaningful judicial review is the most important factor." *Id.* at 183 n.7.

Application of this framework confirms that the district court had jurisdiction. At step one, the CSRA's "text, structure, and purpose" do not display a "fairly discernible" intent to limit jurisdiction over the States' claims. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012). The CSRA's administrative tribunals—the Merit Systems Protection Board and the Federal Labor Relations Authority—are available only to employees, unions, and employers. *See* 5 U.S.C. § 7103(a)(1), (2) (defining, for the purposes of the Federal Service Labor-Management Relations Statute, a "person" to mean "an individual, labor organization, or agency," and an "employee" to mean "an individual employed in an agency" or "whose employment in an agency has ceased" because of unfair labor practices); *id.* § 7123(a) (outlining review for any "person aggrieved by any final order" of the Federal Labor Relations Authority); *id.* § 7703(a)(1) (addressing review of Merit Systems Protection Board orders affecting "employee[s]" or "applicant[s] for employment"). Yet states have clear statutory rights to notice, making it illogical to conclude that Congress intended CSRA preclusion to encompass suits like this one. *See Koretoff v. Vilsack*, 614 F.3d 532, 536 (D.C. Cir. 2010) (no preclusion where Congress did not foreclose "review to the class to which the plaintiff belongs" (alterations omitted) (internal quotation marks omitted)); *Maxon Marine, Inc. v. Dir., Office of Workers' Comp. Programs*, 39 F.3d 144, 146 (7th Cir. 1994) (no preclusion when "the prescribed procedure is

limited to a subset" of agency action and the entity "aggrieved by agency action . . . is not subject to the special procedure").

Even if this Court were to proceed to step two, the CSRA still would not preclude this suit. First, the States are asserting a "here-and-now injury" that cannot be redressed absent immediate judicial review. *Axon*, 598 U.S. at 192. A statutory scheme fails to provide meaningful judicial review if an appeal to an Article III court is not available "in due course." *Rydie v. Biden,* No. 21-2359, 2022 WL 1153249, at *5 (4th Cir. Apr. 19, 2022) (quoting *Bennett*, 844 F.3d at 186). The situation here fits that description. States are different from union or employee litigants who may "litigate their claims . . . through the statutory scheme" and "eventually obtain review and relief." *Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 756 (D.C. Cir. 2019). States cannot engage in collective bargaining as a union can and thus cannot bring a concrete bargaining dispute before the Federal Labor Relations Authority. *See* 5 U.S.C. § 7123(a) (only a "person" may seek judicial review). Nor are States "employee[s]" or "applicant[s] for employment" who can initiate suits before the Merit Systems Protection Board. *Id.* § 7703(a)(1).

The WARN Act is instructive here. Congress modeled RIF notice requirements off those in the WARN Act. *See* 29 U.S.C. § 2102(a)(2); *see also* H.R. Rep. No. 102-124, at 4 ("[M]any feel that Federal employees and the communities in which they live should be provided advance notice of impending dislocations that

is at least comparable to that provided to private sector workers pursuant to WARN."); S. Rep. No. 102-110, at 2 (similar). And under the WARN Act, states and localities can vindicate their statutory right to notice in federal court. *See* 29 U.S.C. § 2104(a)(5) (providing that a "unit of local government" may sue in district court for violations of the notice requirement). It would thus contradict congressional intent to conclude that the States—which can vindicate their right to notice against a private employer—cannot seek judicial review under a similar provision against the Agencies, especially in light of the background presumption of review under the APA. *See* S. Rep. No. 102-110, at 3 ("The fact that an employee worked for the Federal government rather than the private sector does not alter the impact of job dislocation on the employee, the employee's family, or the community in which the employee lives."); *id.* at 4 ("In some respects, federal employees have a greater need for advance notice than do their private sector counterparts.").

Further, the States seek relief that an administrative tribunal cannot provide. The CSRA's administrative tribunals can only redress individual employees' damages (such as by ordering back pay) or remedy harms suffered by agencies or labor organizations. *See, e.g.*, 5 U.S.C. §§ 1214(g)(2), 7105(g)(3), 7118(a)(7). But even if the terminated employees were eventually reinstated and awarded back pay, as the Agencies argue, *see* Appellants' Br. 34, that relief would not undo the States' injuries. States need immediate relief from the administrative burdens and economic

harms imposed on them by the lack of notice, and any reinstatement of employees ordered through the slow-moving administrative process would "come too late to be meaningful" to the States. *Axon*, 598 U.S. at 191; *see also Bacardi & Co. Ltd. v. United States Patent & Trademark Office*, 104 F.4th 527, 535 (4th Cir. 2024) (noting that the mere fact that "a similar result could be achieved by challenging a *different* 'agency action' does not demonstrate that an 'adequate remedy' in court is available for *this* distinct 'agency action'" (quoting 5 U.S.C. § 704)). Put differently, without direct judicial review, the States would be left with no review and no way to vindicate their statutory right to notice before federal agencies conduct RIFs.

Second, the States' claims about lack of notice are "wholly collateral" to the CSRA's administrative review scheme. *Thunder Basin*, 510 U.S. at 212. The States' claims "have nothing to do with" the labor-related matters that the CSRA's administrative tribunals "regularly adjudicate" between unions, employees, and employers. *Axon*, 598 U.S. at 193. The Agencies' assertions that the probationary employees are the "real parties in interest," and that the States are trying to bypass the statutory scheme and turn themselves into "*favored* plaintiffs," misapprehend the States' claims. Appellants' Br. 29. As the district court recognized, the States are not "trying to vindicate the interests of the terminated workers." (JA940.) Rather, the States suffer "their own and separate harms as 'states *qua* states'" (JA940)— harms arising from the Agencies' failure to provide statutorily mandated notice,

which is not "the type of personnel action covered by" the CSRA, *United States v. Fausto*, 484 U.S. 439, 448 (1988). To hold otherwise would mean that Congress created a statutory entitlement for the States to be warned in advance of a mass layoff and to receive certain information, *see* 5 U.S.C. § 3502(d)(3)(A), so that the States can fulfill their mandatory rapid response services, 29 U.S.C. § 3174(a)(2)(A), yet afforded the States no judicial review to vindicate that right. Not only is such a holding atextual, but it would run contrary to the "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986).

Third, for similar reasons, the relevant administrative tribunals lack the expertise to handle the States' claims. Those tribunals specialize in individualized adjudications of prototypical employee disputes and have no unique experience related to the States' claims—i.e., that the Agencies are indiscriminately targeting a swath of the federal workforce to gut the civil service without warning the States.

The Agencies' reliance on cases involving ordinary employment disputes between employees, unions, and employers is misguided. *See* Appellants' Br. 28-29, 31-32 (citing cases such as *Fausto*, 484 U.S. 439). Unlike in those cases, the States are not the type of plaintiffs encompassed by the CSRA—i.e., employees and their bargaining representatives. *See, e.g.*, *Fausto*, 484 U.S. at 443-44 (noting that "[t]he question we face is whether [a particular] withholding of [a] remedy [under

the CSRA] was meant to preclude judicial review for . . . *employees*" wishing to seek that remedy (emphasis added)).  Nor are the States asserting garden-variety employment claims.  *Id.* at 455 ("The CSRA established a comprehensive system for reviewing *personnel action taken against federal employees*." (emphasis added)); *Am. Fed'n of Gov't Emps.*, 929 F.3d at 755 ("Congress intended the [CSRA] statutory scheme to be exclusive with respect to claims *within its scope*." (emphasis added)).  Tellingly, the Agencies have not cited a single case, nor have the States found any, holding that the CSRA precluded non-union, non-employee plaintiffs from judicial review, especially to vindicate a clear statutory right.

*Block v. Community Nutrition Institute*, 467 U.S. 340 (1984), is similarly inapposite.  *See* Appellants' Br. 30.  *Block*, which predated *Thunder Basin*, concerned a statutory scheme that allowed milk producers and handlers to participate in adopting milk market orders, but "[n]owhere in the Act" permitted "participation by consumers."  *Block*, 467 U.S. at 347.  The Court concluded that consumers, having no statutory rights, could not seek judicial review.  Here, in contrast, Congress expressly conferred the right to notice to the States, and thus did not "intend[] to foreclose" their ability to vindicate that right.  *Id.*

## III. THE STATES ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM THAT THE AGENCIES CONDUCTED UNLAWFUL REDUCTIONS IN FORCE.

Federal agencies may terminate probationary employees for one of three reasons: (1) conditions arising before their employment, 5 C.F.R. § 315.805; (2) unsatisfactory performance or conduct during employment, *id.* § 315.804(a); or (3) a broader RIF based on a general "lack of work; shortage of funds; [or] reorganization," *id.* § 351.201(a)(2); 5 U.S.C. § 3502. The Agencies do not dispute this. *See* Appellants' Br. 6-7. Here, the Agencies terminated their probationary employees through a series of massive RIFs but ignored the relevant legal requirements. Because the Agencies did not provide the requisite notice, these RIFs were unlawful and cannot stand.

As the district court found as a factual matter, these terminations—conducted en masse due to a "permanent lack of work" (JA91)—were transparently large-scale RIFs. (JA508-515, JA949-956.) Whether an agency must follow RIF procedures or for-cause procedures depends on the purpose driving the relevant terminations. Under binding OPM instructions, RIF procedures must be used when an agency separates an employee due to "lack of work," "shortage of funds," or "reorganization," among other things. 5 C.F.R. § 351.201(a)(2). Relying on a mountain of evidence, the district court found that it was the Agencies' desire to reorganize, save funds, or eliminate work—not poor employee performance—that

drove these terminations. (JA950 (listing the purposes motivating RIFs and finding that the terminations were "essentially reorganizations (even if the Government does not label them as such)"); JA954 (relying on the Agencies' concession in its briefs that "the terminations were conducted due to a lack of work and/or funds, and that the agencies have been reorganizing their workforces").) As a result, the Agencies needed to follow RIF procedures. The Agencies point to nothing about that factual determination that is clearly erroneous. Nor could they, for the evidence supporting the district court's commonsense conclusion was overwhelming, including:

- The Administration's "directive [to the Agencies] to dramatically reduce the size of the federal workforce" (JA611);

- The Administration's public statement that "[t]here are too many federal employees" and salaries "contribute[] significantly to federal spending and debt," *see* The White House, *Fact Sheet: President Donald J. Trump Works to Remake America's Federal Workforce* (Feb. 11, 2025), tinyurl.com/3tfbpxwc;

- The Agencies' own admissions that many employees were terminated due to a "reduction in force" or "permanent lack of work" (JA91);

- Termination letters that expressly stated that firings were pursuant to applicable "civil service RIF regulations" (JA701);

- Agency communications instructing terminated employees to "direct [their] inquiries to rif@gsa.gov" (JA723); and

- The Agencies' explanation in briefing below that the terminations were justified based on "resource constraints" and current "agency priorities" (JA954; *see* ECF 101, at 20-21).

Similar evidence confirmed that the terminations were *not* based on performance, including:

- OPM's instruction to "terminate," not evaluate, probationary employees (JA233);

- Declarations of agency officials stating that individual assessments were not undertaken (JA229, JA235);

- Employee declarations documenting exemplary evaluations shortly before termination (*see, e.g.*, JA340 ("Outstanding."); JA349 ("Exceeds Expectations."));

- "The sheer number of employees that were terminated in a matter of days"—more than 24,000—which the district court found "belie[d] any argument that these terminations were due to the employees' individual unsatisfactory performance or conduct" (JA509); and

- The Agencies' own declarations *in this case* expressly confirming that the employees were not "terminated in individualized actions based on their performance or conduct" (JA554; *see* JA558, 584).

The Agencies counter that, because they did not formally label the terminations as RIFs, and because they did not take even the most preliminary steps toward complying with the applicable statutes and regulations (for example, by eliminating the relevant *position* rather than merely firing employees), the terminations were somehow not RIFs. *See* Appellants' Br. 19, 36-37. As the district court correctly recognized, that "has it backwards." (JA955.) The existence of a RIF turns not on whether the Agencies complied with statutorily mandated procedures, but on whether they conducted mass terminations due to a lack of work,

a shortage of funds, or a reorganization. And that is so "regardless of what label the [Agencies] attach[] to the actions." (JA955.) To conclude otherwise would reward the Agencies for their noncompliance with the required procedures.

To terminate probationary employees for unsatisfactory performance, employers "must *honestly* be dissatisfied with the probationer's conduct or performance after giving him a fair trial on the job." *McGuffin*, 942 F.3d at 1102 (emphasis added) (internal quotation marks omitted). That is plainly not what happened here. Indeed, the Agencies do not once contend in their brief that these terminations were actually undertaken for cause, nor can they. Instead, they argue that the Court is required to *treat* the mass terminations as if they were for cause, simply because pretextual termination letters said as much. *See* Appellants' Br. 19, 36. But courts are "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com.*, 588 U.S. at 785 (internal quotation marks omitted). Put simply, the Agencies cannot rely on the procedures governing for-cause terminations when those terminations were not undertaken for cause.

As the district court concluded, "these were indeed RIFs." (JA956.) And the Agencies have never disputed that they are required to provide advance notice to States if they wish to conduct RIFs. *See* Appellants' Br. 7. Yet they failed to comply with these clear requirements. Because the Agencies' legal violations are clear and obvious, the States are likely to succeed on the merits.

## IV. THE EQUITABLE FACTORS FAVOR THE STATES.

The district court appropriately exercised its discretion when it determined that the remaining equitable factors were met. The States have demonstrated irreparable harm tied to their obligation to provide rapid response services and benefits to their residents. By failing to provide the requisite notice, the Agencies left the States to navigate without time-sensitive information and forced them to divert critical resources to respond to the mass terminations. The remaining equitable factors overwhelmingly favor the States. There is no public interest in the Agencies conducting unannounced and unlawful RIFs, and any burden to them from the preliminary injunction was properly tailored.

### A. The States Have Demonstrated Irreparable Injury.

As the district court recognized, the Agencies' unwarned mass terminations injured the States, which are legally obligated to provide rapid response services and other benefits to their residents. (JA922-926, JA970-972.) Each day that probationary employees were unemployed created rising and likely unrecoverable costs for the States, including a "substantial" diversion of "resources and personnel to accommodate the shifting employment-response landscape." (JA970.) The damage does not end there. The States must also manage a surge of unemployment claims and administrative investigations, the sudden and abrupt loss of federal personnel embedded in state offices, and the cost of retraining employees to handle

the rising tide of mass terminations.  (JA491; *see also* ECF 4-1, at 24-29 (describing the States' injuries in detail and citing declarations in support).)

The Agencies present no argument to the contrary.  Instead, they recycle their standing argument to suggest that "the states' allegations of downstream economic effects do not establish an injury-in-fact, let alone amount to irreparable harm." Appellants' Br. 38.  The district court properly rejected that argument.  (*See* JA971 ("[T]he harms suffered by the States are directly traceable to the [Agencies'] failure to provide notice").)  The Agencies overlook the "purpose of the notice provision," which "is to give the States *time*, not just information."  (JA934.)  And both components are critical for the States to satisfy their obligations to their residents under federal and state law.  Without the required notice, the States have sustained significant costs, which they have no way to avoid.

The States' mandatory rapid response obligations (which the Agencies do not even mention in their brief) are just one example.  The Agencies' failure to provide the requisite notice left state personnel scrambling to fulfill their statutory duties. (JA934 (emphasizing that notice "*in advance*" is necessary "so that [the States] can make adequate preparations").)  As discussed at pages 13-15 above, the States were forced to divert staff to contact federal agencies, monitor public reporting, and conduct mass outreach to those they believed to be affected.  The increased burdens on the States' personnel themselves constitute irreparable injury.  *See Cook County*

*v. Wolf*, 962 F.3d 208, 233 (7th Cir. 2020) (concluding that the need to "divert resources away from existing programs" is irreparable harm).

The administrative burden from state unemployment investigations caused by federal layoffs is yet another example. When an employer alleges that an employee voluntarily quit or was terminated for cause (such as for certain misconduct, including deficient performance) and the employee disputes those allegations, state law and federal due process requirements generally require investigations (including notice to the claimant and an opportunity to be heard) prior to a determination of eligibility for employment benefits. State personnel will thus be required to conduct time-consuming and expensive administrative investigations into these claims, despite the Agencies' concessions that the firings were not really for cause at all. (*See, e.g.*, JA89-93, JA106-108, JA113-114, JA129-130, JA145-146, JA250.) This process will impose significant administrative and financial burdens on the States even though the Agencies could lawfully have achieved their goal by simply adhering to the RIF statute's requirements in the first place. *See, e.g.*, *DeOtte*, 20 F.4th at 1068 (collecting cases). These are just a few of the significant harms to the States resulting from the Agencies' unlawful terminations. *See* discussion at pages 13-15 above (detailing the costs related to health insurance coverage, the impact on state programs that depend on federal workers to perform crucial public health functions, and the loss of tax revenue).

**B.      The Balance of Equities and the Public Interest Heavily Favor a Preliminary Injunction.**

The remaining equitable factors overwhelmingly favor the States.  To begin, "the public undoubtedly has an interest in seeing its governmental institutions follow the law."  *Roe*, 947 F.3d at 230-31 (internal quotation marks omitted).  Here, the Agencies claim the authority to fire employees en masse based on shifting justifications and with no process, despite clear statutory and regulatory commands to the contrary.  *Compare* Appellants' Br. 36-38, *with* ECF 101, at 16-20.  Requiring the Agencies to follow the law in this circumstance is in the public interest.

Additionally, the Agencies' failure to follow the law has damaged not only the States, but also federal probationary employees, whose interests should surely count in the balancing of equities.  Those 24,000 public servants were terminated without notice through no fault of their own, and they have consequently been forced to seek state unemployment compensation and other benefits.  The preliminary injunction prohibits another round of mass terminations, unless the Agencies follow the proper RIF procedures.  Upending the injunction would leave thousands of blameless public servants in the lurch and thus would be neither equitable nor in the public interest.  That is especially the case now that the Office of Special Counsel has declined to pursue probationary employees' "claims of unlawful termination in part because they were fired not for individual cause, but en masse as part of . . . [a] governmentwide effort to reduce the federal service."  Eileen Sullivan, *Government*

*Watchdog Drops Inquiries Into Mass Firings of Probationary Workers*, N.Y. Times (Apr. 21, 2025), tinyurl.com/mjk4j239 (internal quotation marks omitted).

By contrast, the Agencies' asserted harm cannot survive scrutiny. The Agencies allege harm from employing "individuals whose services it no longer needs" and incurring "losses" from paying them "while the district court's order is in effect." Appellants' Br. 38-39. But in the RIF statute, Congress has already expressly required that federal agencies employ individuals whose services were ostensibly no longer required for 60 days. *See* 5 U.S.C. § 3502(d). So, had the Agencies followed the law, they would have been required to employ individuals whose services they claim to no longer require for a short time in any event. Such an outcome is by congressional design, not a "loss" standing in the way of injunctive relief.

In arguing the contrary, the Agencies gesture at the Supreme Court's recent per curiam stay opinion in a case involving the unlawful termination of federal grants to states. *See* Appellants' Br. 39 (referring to Dkt. 42 at 5 (citing *Dep't of Educ. v. California,* 145 S. Ct. 966 (2025) (per curiam))). In balancing the harms there, the Court suggested that the states could recover any wrongfully withheld funds at a later stage in the litigation. *California*, 145 S. Ct. at 969. The Court also noted that the states had "represented in th[e] litigation that they have the financial wherewithal to keep their programs running." *Id.* Here, however, the Agencies have not, and

cannot, argue that the States would ever be able to recover the costs incurred in deploying their statutorily required rapid response services or in undertaking other measures in response to the Agencies' unlawful conduct. And contrary to the Agencies' suggestion, *California* does not stand for the broad proposition that any time an injunction would order the federal government to spend funds (particularly when the federal government is required to do so by statute) the equities automatically tip in its favor. Such a lopsided rule would swallow the balancing analysis.

Moreover, the equities do not tilt in the Agencies' favor simply because they claim that expending obligated funds is inconsistent with "current agency priorities" (ECF 101, at 20-21). The Agencies suffer no injury by expending monies on the costs for which they were appropriated. *Accord Agility Pub. Warehousing Co. K.S.C.P. v. United States*, 969 F.3d 1355, 1365 (Fed. Cir. 2020) ("[T]he executive branch must spend appropriated funds in accordance with the purpose for which Congress made the appropriations."). In fact, the Impoundment Control Act requires agencies to do just that. *In re Aiken County*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (Kavanaugh, J.) (emphasizing that "the President does not have unilateral authority to refuse to spend . . . funds" under the Impoundment Control Act).

The Agencies' position amounts to an impoundment of funds appropriated for the federal workforce. They do not claim that immediate termination is required for

budgetary reasons, or that the funds required for employment could be used elsewhere. Nor do they explain how the mass terminations will not effectively eliminate those positions given the current hiring freeze, which the Administration recently extended until July. *See* Presidential Memoranda, *Extension of Hiring Freeze* (Apr. 17, 2025), tinyurl.com/58xxbzbf ("No Federal civilian position that is presently vacant may be filled, and no new position may be created . . . .").

Nor does the preliminary injunction significantly burden the Agencies' "internal affairs." *See* Appellants' Br. 38-39 (quoting *Sampson v. Murray*, 415 U.S. 61, 83 (1974)). In fact, the injunction leaves the Agencies ample room to terminate probationary employees. It permits the Agencies to move forward with legitimate RIFs during the pendency of the case, so long as they follow the proper procedures and provide the statutorily required notice to the States. (JA983.) It also explicitly allows for "lawful terminations of probationary federal employees" "on the basis of good-faith, individualized determinations." (JA991.) The States can hardly be blamed for the fact that the Agencies have not availed themselves of either option.

The injunction is also considerably narrower than the TRO. It applies only to probationary employees "[w]hose duty station . . . and/or residence is in one of" the States. (JA993.) That the district court stayed these terminations, thereby temporarily reinstating employees, does not make the injunction overly burdensome. As the Agencies repeatedly conceded at the TRO stage, "the States' asserted injuries

could only be conceivably redressed by [probationary employees'] *reinstatement*."
(ECF 20, at 14; *see id.* at 15 (arguing "the Court again would have to order
reinstatement of the removed probationers" to remedy the States' injury); JA934.)
Reinstatement is simply the result of staying the Agencies' unlawful terminations to
the extent they are injuring the States—until the requisite notice is given.

As the district court explained, the Agencies "cannot engage in far-reaching
illegal activity and then complain that the remedy is too burdensome."  (JA973.)
The equities here overwhelmingly favor restoring the status quo ante, at least until
the Agencies employ the proper procedures.

# CONCLUSION

The judgment of the United States District Court for the District of Maryland should be affirmed.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the
District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

ANNE DENG
TESSA GELLERSON
CHRIS EDWARD MENDEZ
MARK A. RUCCI
Assistant Attorneys General
Office of the Attorney General for
  the District of Columbia
400 6th Street N.W., 8th Floor
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

Attorneys for the District of Columbia

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Julia Doyle
_____
JULIA DOYLE
Solicitor General

JOSHUA M. SEGAL
Principal Deputy Solicitor General

ADAM KIRSCHNER
MICHAEL DREZNER
VIRGINIA A. WILLIAMSON
Assistant Attorneys General
Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-6584
(410) 576-6437 (facsimile)
jdoyle@oag.state.md.us

Attorneys for the State of Maryland

KEITH ELLISON
Attorney General of Minnesota

LIZ KRAMER
Solicitor General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1059
(651) 282-5832 (facsimile)
liz.kramer@ag.state.mn.us

Attorneys for the State of Minnesota


ROB BONTA
Attorney General of California

SATOSHI YANAI
Senior Assistant Attorney General
MIRANDA MAISON
Supervising Deputy Attorney General
DEMIAN CAMACHO
Deputy Attorney General
California Department of Justice
600 W. Broadway, Suite 1800
San Diego, CA 92101
(619) 738-9132
Demian.Camacho@doj.ca.gov

Attorneys for the State of California

KRISTIN K. MAYES
Attorney General of Arizona

HAYLEIGH S. CRAWFORD
Deputy Solicitor General
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Hayleigh.Crawford@azag.gov
ACL@azag.gov

Attorneys for the State of Arizona


PHIL WEISER
Attorney General of Colorado

DAVID MOSKOWITZ
Deputy Solicitor General
Office of the Colorado Attorney
  General
1300 Broadway, #10
Denver, Colorado 80203
(720) 508-6000
David.Moskowitz@coag.gov

Attorneys for the State of Colorado

WILLIAM TONG
Attorney General of Connecticut

MICHAEL SKOLD
Solicitor General
165 Capitol Avenue
Hartford, Connecticut 06106
 (860) 808 5020
michael.skold@ct.gov

Attorneys for the State of Connecticut

KATHLEEN JENNINGS
Attorney General of Delaware

IAN R. LISTON
Director of Impact Litigation

VANESSA L. KASSAB
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, Delaware 19801
(302) 683-8899
vanessa.kassab@delaware.gov

Attorneys for the State of Delaware

ANNE E. LOPEZ
Attorney General of Hawaiʻi

KALIKOʻONĀLANI D. FERNANDES
Solicitor General
425 Queen Street
Honolulu, Hawaiʻi 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

Attorneys for the State of Hawaiʻi

KWAME RAOUL
Attorney General of Illinois

JANE ELINOR NOTZ
Solicitor General

SARAH A. HUNGER
Deputy Solicitor General
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202
sarah.hunger@ilag.gov

Attorneys for the State of Illinois

ANDREA JOY CAMPBELL
Attorney General of Massachusetts

KATHERINE DIRKS
Chief State Trial Counsel
Office of the Attorney General
1 Ashburton Pl.
Boston, Massachusetts 02108
(617) 963-2277
katherine.dirks@mass.gov

Attorneys for the Commonwealth
  of Massachusetts


DANA NESSEL
Attorney General of Michigan

BRYAN DAVIS, JR.
DEBBIE TAYLOR
Assistant Attorneys General
Department of Attorney General
Labor Division
3030 W. Grand Blvd., Ste. 9-600
Detroit, Michigan 48202
davisb47@michigan.gov
taylord8@michigan.gov
(313) 456-2200

Attorneys for the State of Michigan


AARON D. FORD
Attorney General of Nevada

HEIDI PARRY STERN
Solicitor General
Office of the Nevada Attorney
  General
1 State of Nevada Way, Ste. 100
Las Vegas, Nevada 89119
HStern@ag.nv.gov

Attorneys for the State of Nevada


MATTHEW J. PLATKIN
Attorney General of New Jersey

NATHANIEL LEVY
Deputy Attorney General
25 Market Street
Trenton, New Jersey 08625
(862) 350-5800
Nathaniel.Levy@njoag.gov

Attorneys for the State of New Jersey

RAÚL TORREZ
Attorney General of New Mexico

ANJANA SAMANT
Deputy Counsel for Impact Litigation
New Mexico Department of Justice
408 Galisteo St.
Santa Fe, New Mexico 87501
(505) 490-4060
asamant@nmdoj.gov

Attorneys for the State of New Mexico

LETITIA JAMES
Attorney General of New York

MARK S. GRUBE
Senior Assistant Solicitor General
New York Office of the Attorney
  General
28 Liberty St.
New York, New York 10005
(212) 416-8028
mark.grube@ag.ny.gov

Attorneys for the State of New York

DAN RAYFIELD
Attorney General of Oregon

STACY M. CHAFFIN
Senior Assistant Attorney General
1162 Court Street NE
Salem, Oregon 97301
Stacy.Chaffin@doj.oregon.gov

Attorneys for the State of Oregon

PETER F. NERONHA
Attorney General of Rhode Island

SARAH W. RICE
Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400, Ext. 2054
srice@riag.ri.gov

Attorneys for the State of Rhode Island

CHARITY R. CLARK
Attorney General of Vermont

JONATHAN T. ROSE
Solicitor General
109 State Street
Montpelier, Vermont 05609
(802) 828-3171
Jonathan.rose@vermont.gov

Attorneys for the State of Vermont

JOSHUA L. KAUL
Attorney General of Wisconsin

BRIAN P. KEENAN
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0020
(608) 294-2907 (Fax)
keenanbp@doj.state.wi.us

Attorneys for the State of Wisconsin

**CERTIFICATE OF COMPLIANCE**

1.    This document complies with the type-volume limitations of Fed. R.

App. P. 32(a)(7)(B) because it contains 12,060 words, excluding the parts exempted

by Fed. R. App. P. 32(f).

2.    This document complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has

been prepared in a 14-point proportionally spaced typeface, Times New Roman,

using Microsoft Word.

/s/ Julia Doyle

_____

Julia Doyle

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of April, 2025, the foregoing brief was filed electronically and served on counsel of record who are registered CM/ECF users.


/s/ Julia Doyle

_____

Julia Doyle