No. 25-1248 (L)

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

**STATE OF MARYLAND**, *et al.*,

*Plaintiffs-Appellees*,

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE**, *et al.*,

*Defendants-Appellants*.

_____

On Appeal from the United States District Court for the District of Maryland

_____

### BRIEF OF *AMICI CURIAE* FORMER GOVERNMENT OFFICIALS DONALD B. AYER, BARBARA COMSTOCK, JOHN FARMER JR., PETER KEISLER, ET AL. IN SUPPORT OF PLAINTIFFS-APPELLEES

Kristy Parker
Ori Lev
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave NW #163
Washington, DC

Conor Gaffney
PROTECT DEMOCRACY PROJECT
3014 Dauphine Street
New Orleans, LA 70117

Julia L. Torti
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10038

*Counsel for* Amici Curiae

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................i

TABLE OF AUTHORITIES ................................................................ ii

IDENTITY AND INTERESTS OF *AMICI CURIAE* .............................1

INTRODUCTION................................................................................4

ARGUMENT .....................................................................................5

   I.   The Supreme Court has narrowly applied doctrines of implied congressional intent. .......................................................................5

  II.  Granting a stay would require expanding a doctrine that purports to rely on implied congressional intent while ignoring clear statutory text..........................7

     A.   This Court should hesitate to extend a doctrine of implied congressional intent to bar the States' claims from federal district court.........................7

     B.   Statutory text explicitly authorizes federal district court review of the States' claims. ..........................................12

CONCLUSION .................................................................................15

CERTIFICATE OF COMPLIANCE ...................................................17

# TABLE OF AUTHORITIES

**Cases**

*Am. Sch. of Magnetic Healing v. McAnnulty*,
  187 U.S. 94 (1902) ................................................................5

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
  598 U.S. 175 (2023) ...............................................7, 9, 10, 11

*BedRoc Ltd., LLC v. United States*,
  541 U.S. 176 (2004) ..............................................................13

*Block v. Cmty. Nutrition Inst.*,
  467 U.S. 340 (1984) ................................................................9

*Chamber of Com. of the U.S. v. Whiting*,
  563 U.S. 582 (2011) ............................................................6, 7

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ..............................................................13

*Corr. Servs. Corp. v. Malesko*,
  534 U.S. 61 (2001) ..................................................................6

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
  601 U.S. 42 (2024) ................................................................14

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020) ..................................................................14

*Elgin v. Dep't of the Treasury*,
  567 U.S. 1 (2012) ...............................................................8, 11

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018) ..............................................................14

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ..................................................5, 9, 10, 11, 15

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) ........................................................................11

*Mims v. Arrow Fin. Servs., LLC*,
    565 U.S. 368 (2012) ........................................................................13

*Morton v. Mancari*,
    417 U.S. 535 (1974) ........................................................................15

*Pinar v. Dole*,
    747 F.2d 899 (4th Cir. 1984) ...........................................................9

*Posadas v. Nat'l City Bank of New York*,
    296 U.S. 497 (1936) ........................................................................15

*Solem v. Bartlett*,
    465 U.S. 463 (1984) ........................................................................13

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ...........................................................7, 9, 10, 11

*United States v. Borden Co.*,
    308 U.S. 188 (1939) ........................................................................15

*United States v. Fausto*,
    484 U.S. 439 (1988) ......................................................................8, 9

*West Virginia v. Env't Prot. Agency*,
    597 U.S. 697 (2022) ..........................................................................6

*Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*,
    586 U.S. 9 (2018) ...........................................................................13

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ..........................................................................6

**Statutes**

28 U.S.C. § 1331 ..................................................................5, 14, 15

5 U.S.C. § 1103(b) ...................................................................................16

5 U.S.C. § 1105 ........................................................................................16

5 U.S.C. § 701(a)(1)-(2) ..........................................................................15

5 U.S.C. § 702 ............................................................................................5

5 U.S.C. § 7703(a)(1) .................................................................................8

Pub. L. No. 95-454, 92. Stat. 1111 .........................................................16

**Rules**

Fed. R. App. P. 29(a)(4)(E) ........................................................................1

**Other Authorities**

Rebecca Beitsch and Rachel Frazin, *Watchdog declines to pursue cases involving fired probationary federal workers*, The Hill (Apr. 22, 2025)............................12

Eileen Sullivan, *Government Watchdog Drops Inquiries Into Mass Firings of Probationary Workers,* New York Times (Apr. 21, 2025)……………….....12

## IDENTITY AND INTERESTS OF *AMICI CURIAE*[1]

*Amici curiae* are 14 former government officials who have collectively served in career, appointed, and elected positions at both the state and federal levels. They have deep expertise in the administration of federal agencies, and in how state and local governments—as well as everyday Americans—rely on the services the federal government provides. The interest of *Amici* stems from that expertise, as well as *Amici*'s commitment to the rule of law, the U.S. Constitution, and ensuring that state governments can seek redress from Article III courts for legal challenges of national scope and importance. As former government officials, including in the federal civil service, *Amici* have a deep and unique understanding of the services that federal agencies deliver and the importance of maintaining continuity of those services for Americans. *Amici* both understand the importance of federal executive power and believe in preserving its proper scope. *Amici* thus present a unique perspective not represented by the parties.

*Amici* respectfully submit this brief to caution against adopting one of the Agencies' primary arguments: that this Court should extend a doctrine of implied Congressional intent to the States' claims in this case.

---

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), *Amici* state that no counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund its preparation or submission. No person other than *Amici* or their counsel made a monetary contribution to its preparation or submission.

1

A detailed list of *Amici* and their relevant backgrounds follows:

- **Donald B. Ayer**, Deputy Attorney General in the George H.W. Bush Administration (1989-1990); Principal Deputy Solicitor General in the Ronald Reagan Administration (1986-88); United States Attorney for the Eastern District of California in the Ronald Reagan Administration (1982-86); Assistant United States Attorney (1977-79).

- **Barbara Comstock**, Representative of the 10th District of Virginia from 2015 to 2019 (R).

- **John Farmer Jr.**, New Jersey Attorney General (1999-2002) (I); University Professor, Rutgers University, former Dean Rutgers Law School (2009-2013).

- **Peter Keisler**, Acting Attorney General in the George W. Bush Administration (2007); Assistant Attorney General for the Civil Division in the George W. Bush Administration (2003-2007); Principal Deputy Associate Attorney General and Acting Associate Attorney General in the George W. Bush Administration (2002-2003); Assistant and Associate Counsel to President Ronald Reagan (1986-1988).

- **Philip Allen Lacovara**, Deputy Solicitor General in the Richard M. Nixon Administration (1972-1973); Counsel to the Special Prosecutor, Watergate Special Prosecutor's Office (1973-1974).

- **Judge J. Michael Luttig**, U.S. Circuit Judge, U.S. Court of Appeals for the Fourth Circuit (1991-2006).

- **John McKay**, U.S. Attorney for the Western District of Washington in the George W. Bush Administration (2001-2007).

- **Trevor Potter**, Chairman of the Federal Election Commission (1994); Commissioner of the Federal Election Commission (1991-1995).

- **Alan Charles Raul**, Vice Chairman, Privacy and Civil Liberties Oversight Board in the George W. Bush Administration (2006-2008); General Counsel, U.S. Department of Agriculture in the George H.W. Bush Administration (1989-1993); General Counsel of the Office of Management and Budget in

2

the George H.W. Bush and Ronald Reagan Administrations (1988-1989); Associate Counsel to President Ronald Reagan (1986-1988).

- **Paul Rosenzweig**, Deputy Assistant Secretary for Policy of the Department of Homeland Security in the George W. Bush Administration (2005-2009).

- **Claudine Schneider**, Representative of the 2nd District of Rhode Island (1981-1991) (R).

- **Robert Shanks**, Deputy Assistant Attorney General for the Office of Legal Counsel in the Ronald Reagan Administration (1981-1984).

- **William Weld**, Governor of Massachusetts (1991-1997) (R).

- **Christine Todd Whitman**, Governor of New Jersey (1994-2001) (R); Administrator of the Environmental Protection Agency in the George W. Bush Administration (2001-2003).

## INTRODUCTION

The Appellant Agencies' argument that the Civil Service Reform Act ("CSRA") divests the district court of jurisdiction, Appellants' Br. at 28-25, is likely to fail. *Amici* focus on one reason why: To justify overturning the preliminary injunction entered by the District Court, the Agencies asks that this Court *extend* a disfavored doctrine, and find that the CSRA implicitly deprives federal district courts of jurisdiction to hear the Administrative Procedure Act ("APA") and *ultra vires* claims of the State Plaintiffs.

Atextual doctrines that imply congressional intent to strip federal district courts of jurisdiction over claims should not be expanded absent evidence of extraordinarily clear congressional intent. This is particularly true here, where a finding of federal court preclusion would bar meaningful judicial review of the States' claims. Moreover, the statutory text of the APA expressly permits review of the agency actions challenged, and the CSRA—which created a statutory entitlement for the States to be warned in advance of large-scale layoffs—could have, but did not, explicitly channel the States' APA claims to an administrative forum. The statutory text and applicable case law both establish that federal district courts have jurisdiction over the States' claims.

This Court should reject the Agencies' novel arguments, the acceptance of which would significantly undermine the power of Article III courts to review

4

government action. Ruling in the Agencies' favor would not only break with precedent and contravene statutory text, it would diminish the role of the judiciary in reviewing consequential government acts. This disruption in the balance between our government's three co-equal branches could improperly insulate the executive branch from judicial scrutiny and erode the rule of law.

## ARGUMENT

I. **The Supreme Court has narrowly applied doctrines of implied congressional intent**.

The States brought claims in this case under an express cause of action and invoked an express grant of federal jurisdiction to vindicate a clear statutory right. The APA provides that "[a] person . . . aggrieved by agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. And 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The States' *ultra vires* claim is based on federal courts' longstanding equitable power to review illegal governmental acts, a power that has survived Congress's creation of remedies under the APA and other statutes. *See Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010).

Despite these clear textual provisions and foundations, the Agencies argue that the States' claims cannot be maintained because, in enacting the CSRA,

5

Congress implicitly eliminated federal district court jurisdiction to review these claims. But doctrines of implied congressional intent are strongly disfavored and this Court should decline to extend a disfavored doctrine.

The Supreme Court has retreated from the project of searching for implied meaning beyond statutory text. While federal courts used to frequently depart from statutory text in order to effectuate congressional purpose, that jurisprudence is "a relic of the heady days in which [the Supreme] Court assumed common-law powers." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (Scalia, J., concurring). Today, the Supreme Court has "abandoned that power to invent 'implications' in the statutory field." *Id.*; *see Ziglar v. Abbasi*, 582 U.S. 120, 121 (2017) (*Bivens* doctrine of finding implied causes of action is "now considered a 'disfavored' judicial activity") (internal citations omitted); *Chamber of Com. of the U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (noting the "high threshold" to find federal law has implicitly preempted state law) (internal citations omitted); *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 722–24 (2022) (implicit delegations of authority to agencies on major questions considered dubious).

Justice Gorsuch's recent concurrence in *Axon Enterprise* explained some of the reasons for skepticism of doctrines of implied intent generally, and implied jurisdiction stripping specifically:

> [W]hat gives courts authority to engage in this business of jurisdiction-stripping-by-implication? The answer, of course, is nothing. Under our

Constitution, "Congress, and not the Judiciary, defines the scope of federal jurisdiction." Federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." That is why we have called it the "true rule" that "statutes clearly defining the jurisdiction of the courts . . . must control . . . in the absence of subsequent legislation equally express." . . . *Thunder Basin* defies these foundational rules.

*Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 207–08 (2023) (Gorusch, J., concurring) (internal citations omitted).

This Court should reject the Agencies' invitation to strip federal jurisdiction by implication, and instead decline federal jurisdiction only when Congress or controlling precedent clearly says it must. Here, that "high threshold" has not been met. *Whiting*, 563 U.S. at 607.

II. **Granting a stay would require expanding a doctrine that purports to rely on implied congressional intent while ignoring clear statutory text**.

A. **This Court should hesitate to extend a doctrine of implied congressional intent to bar the States' claims from federal district court.**

To succeed in their appeal, the Agencies must convince this Court to embrace an *expansion* of the implied channeling doctrine. The Agencies push for a broad rule without a basis in law: that parties like the States cannot bring challenges claiming the government violated the law in federal district court if those claims are somehow related to a government employment decision—even if this means the States cannot meaningfully proceed in any forum. *See* 5 U.S.C. § 7703(a)(1) (limiting Federal Circuit jurisdiction to appeals brought by "[a]ny employee or applicant for

employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board"). Indeed, the Agencies contend that the CSRA silently reflects "Congress's considered judgment" that such challenges to agency action directly contravening a clear statutory entitlement should be excluded entirely from federal district court. Appellants' Br. at 32. The Agencies' argument finds no support in statutory text or modern judicial precedent.

No decision of the Supreme Court or this Court answers the question presented here: Whether States harmed by agency action that is alleged to contravene the States' clear statutory entitlement and also impacts federal employees can seek redress in federal district court. *See* Appellees' Br. at 34 ("The Agencies ask this Court to be the first in the country to hold that the CSRA precludes non-union, non-employee plaintiffs, like the States, from seeking redress in any forum for a clear statutory violation of their rights that has caused concrete harm."). Though the Agencies cite *United States v. Fausto*, 484 U.S. 439 (1988), to support their argument that the States are precluded from challenging agency action related to employment decisions, Appellants' Br. at 31, that case did not sweep as broadly as the Agencies claim. *See Fausto*, 484 U.S. at 443–44 (1988) ("The question we face is whether [the CSRA's] withholding of remedy was meant to preclude judicial review for [certain] *employees*.") (emphasis added); *see also Elgin v. Dep't of the Treasury*, 567 U.S. 1, 15 (2012) (explaining that exclusivity of the administrative

forum provided by the CSRA turns "on the *type of the employee* and the challenged employment action") (emphasis added); *Pinar v. Dole*, 747 F.2d 899, 913 (4th Cir. 1984) ("Congress clearly intended the CSRA to be the exclusive remedy for *federal employees*….") (emphasis added). Thus, in order for the Agencies to prevail, this Court would need to expand the scope of CSRA channeling doctrine to reach new types of claims.

The question is not whether some claims are precluded from district court under a particular statutory scheme, but whether Congress intended for *these specific claims* to be precluded. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994). The Agencies summarily dismiss the District Court's reliance on *Thunder Basin* and *Axon* and instead argue that earlier decisions that predate the Thunder Basin framework should control. Appellants' Br. at 33. But the Supreme Court's more recent decisions proceed with the proper caution when the Court has been asked to bar legal claims from federal court without any explicit statutory text to that effect. *See Thunder Basin*, 510 U.S. at 212-13; *Axon*, 598 U.S. at 189; *see also Free Enter. Fund*, 561 U.S. at 489. By contrast, the cases on which the Agencies rely—*Fausto* and *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340 (1984), *see* Appellants' Br. at 30-31—both predate *Thunder Basin* and do not include the claim-specific analysis the Supreme Court has since demanded.

9

A "statutory review scheme [that precludes district court jurisdiction] does not necessarily extend to every claim concerning agency action." *Axon*, 598 U.S. at 185. The *Thunder Basin* standard asks three questions that aid in determining "whether the particular claims brought were 'of the type Congress intended to be reviewed within this statutory structure.'" *Axon*, 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 212). Courts "presume that Congress does not intend to limit jurisdiction if 'a finding of preclusion could foreclose all meaningful judicial review'; if the suit is 'wholly collateral to a statute's review provisions'; and if the claims are 'outside the agency's expertise.'" *Free Enter. Fund*, 561 U.S. at 489 (quoting *Thunder Basin*, 510 U.S. at 212–13). Of those three factors, the first weighs heavily, as "Congress rarely allows claims about agency action to escape effective judicial review." *Axon*, 598 U.S. at 186. Here, of course, the Agencies have effectively conceded that the States cannot meaningfully proceed outside of federal court.

These claim-specific inquiries help guard against courts being too quick to infer that Article III courts' traditional powers have been silently swept aside by Congress. The Agencies offer no persuasive reason—let alone a reason with basis in statutory text—for why this Court should find that the implied preclusive effect of the CSRA sweeps so broadly as to include the States' claims challenging an alleged violation of a clear statutory right. The Agencies argue that the States' claims "fall[] in the heartland of challenges that Congress wanted only the MSPB (and

eventually, the Federal Circuit and Supreme Court) to resolve." Appellants' Br. at 34. But the Agencies cite no direct support for this conclusion and fail to account for the nature of the States' claims, which are based on the statutory requirement that they be provided notice before large-scale layoffs occur.

The States are "bringing a different claim" from the kind of employee claim the CSRA addresses. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 222 (2012). To succeed, the Agencies must convince this Court that any suits "involving similar subject matter"—here, the termination of federal employees—"trigger a remedial statute's preclusive effect." *Id.* at 223. "Perhaps Congress would … make the identical judgment for the full range of lawsuits pertaining to [federal employees]," but "that is for Congress to tell [courts], not for [courts] to tell Congress." *Id.* at 224.

The Supreme Court, in applying the full *Thunder Basin* standard to a variety of statutory schemes that provide for administrative review, has generally found that individual "run of the mine" claims based in specific statutes belong in those administrative fora, *see Elgin*, 567 U.S. at 22; *Thunder Basin*, 510 U.S. at 205, while broader challenges to agencies or their policies that may implicate constitutional questions should be heard by an Article III district court, *see Free Enter. Fund*, 561 U.S. at 489; *Axon*, 598 U.S. at 189.

The Agencies ask this Court to break new ground and restrict Article III courts' ability to carry out their longstanding role in evaluating the legality of government action. Statutory text and judicial precedent counsel against such a dramatic doctrinal extension.[2]

## B. Statutory text explicitly authorizes federal district court review of the States' claims.

There is additional reason not to adopt the Agencies' unprecedented interpretation of the CSRA: Such an interpretation would conflict with the explicit statutory text in the APA. The text and structure of both statutes, when read together, indicate that Congress did not intend that the CSRA preclude federal district court jurisdiction over the sort of claims presented here.

---

[2] The Agencies' reliance on the fact that some terminated employees filed claims with the Office of Special Counsel is unavailing. Appellants' Br. at 34. President Trump has since fired the Special Counsel and appointed an Acting Special Counsel who has summarily dismissed probationary employees' claims on the ground that their firing "in the context of the government-wide effort to reduce the federal service through probationary terminations, was more likely effected in accordance with the new administration's priorities than a decision personal to you." *Quoted in* Rebecca Beitsch and Rachel Frazin, *Watchdog declines to pursue cases involving fired probationary federal workers*, The Hill (Apr. 22, 2025), available at https://thehill.com/homenews/administration/5260584-watchdog-office-special-counsel-probationary-federal-workers/. *See also* Eileen Sullivan, *Government Watchdog Drops Inquiries Into Mass Firings of Probationary Workers*, New York Times (Apr. 21, 2025), available at https://www.nytimes.com/2025/04/21/us/politics/probationary-workers-firings-trump-osc.html. Thus, the very administrative process that the Agencies believe should be the forum to hear employees' claims has dismissed those claims because the firings were, in effect, a Reduction in Force.

At bottom, the States rely on the explicit statutory terms of the APA and Section 1331, while the Agencies rely on a claimed implicit intent in a different statute to limit those express terms. In this matchup, the express statutory terms should control. It is axiomatic that judicial "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). "The most probative evidence of congressional intent is the statutory language used . . . . " *Solem v. Bartlett*, 465 U.S. 463, 470 (1984). And especially in matters of federal jurisdiction, the "jurisdiction conferred by 28 U.S.C. § 1331 should hold firm against 'mere implication flowing from subsequent legislation.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 808 (1976)). Reading the APA and the CSRA together indicates that Congress intended for the States' claims against the Agencies to be heard in federal district court.

The APA "creates a basic presumption of judicial review for one suffering legal wrong because of agency action." *Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 586 U.S. 9, 22 (2018) (internal quotations and citations omitted). This "strong presumption," *id. at 23*, is overcome only in two narrow circumstances. The first exception is where "the relevant statute precludes review" (addressed above) and the second is in a circumstance where the action is "committed to agency discretion by law." *Id.* (quoting 5 U.S.C. § 701(a)(1)-(2)); *see also Dep't of Homeland Sec. v.*

*Regents of the Univ. of Cal.*, 591 U.S. 1, 17 (2020) (agency discretion exception construed "quite narrowly") (citation omitted).

Congress enacted the CSRA in 1978, decades after the APA. Pub. L. No. 95-454, 92. Stat. 1111. Nowhere in the CSRA did Congress explicitly repeal—or even refer to—the provisions of the APA that provide for judicial review of certain agency actions. The text of the CSRA does, however, refer to other provisions of the APA. *See* 5 U.S.C. § 1103(b); 5 U.S.C. § 1105. Far from impliedly repealing any provision of the APA—and especially a provision as central to the APA's purpose as its provision for judicial review of agency actions—the CSRA actually cross-references parts of the APA. The text of the CSRA provides no basis for this Court to skirt the clear commands of the APA.

The argument that the CSRA silently repealed the APA's judicial review provision for third-party plaintiffs "faces a stout uphill climb." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018).

> When confronted with two Acts of Congress allegedly touching on the same topic, this Court is not at liberty to pick and choose among congressional enactments and must instead strive to give effect to both. A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow.

*Id*. (internal quotations and citations omitted). *See also Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024) ("We approach federal statutes with a 'strong presumption' they can exist harmoniously.") (citation omitted). This

14

"cardinal rule" of statutory interpretation has a long history. *Posadas v. Nat'l City Bank of New York*, 296 U.S. 497, 503, (1936) (discussing longstanding rule and citing cases); *see also United States v. Borden Co.*, 308 U.S. 188, 198–99 (1939) (same); *Morton v. Mancari*, 417 U.S. 535, 550 (1974) (Title VII did not implicitly repeal preferences under the Indian Reorganization Act).

The Agencies' sweeping argument that the CSRA effectively repeals the APA's judicial review provisions for the States—leaving them with no avenue for redress—is incompatible with the APA's statutory text and the principles articulated above. The statute cannot bear such an interpretation, nor is it consistent with the case law. Likewise, there is no basis to find that, in this context, the CSRA displaces the long-established judicial power to review governmental action via *ultra vires* claims. *See Free Enter. Fund*, 561 U.S. at 491 & n.2.

## CONCLUSION

This Court should reject the Agencies' invitation to bar the States' claims from federal court without sound justification in statutory text or judicial precedent. Proper respect for Congress and the role of Article III courts demands that federal statutes only bar federal court jurisdiction over a claim when it is overwhelmingly clear that Congress intended that claim to be so barred. Federal district courts have jurisdiction to hear the States' claims challenging the Agencies' actions.

Date: April 30, 2025          Respectfully submitted,

/s/ Kristy Parker
Kristy Parker
Ori Lev
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave NW #163
Washington, DC 20006

Conor Gaffney
PROTECT DEMOCRACY PROJECT
3014 Dauphine Street
New Orleans, LA 70117

Julia L. Torti
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10038

*Counsel for* Amici Curiae

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that the foregoing document contains 3,581 words, not including items that may be omitted from the word count pursuant to Federal Rule of Appellate Procedure 32(f).

Dated: April 30, 2025              /s/ *Kristy Parker*
                                  Kristy Parker